MURDOCK, Judge.
Tracy and Sherie Turner appeal from an adverse decision by the Tuscaloosa Circuit Court in their suit for declaratory and injunctive relief against Bobby Sellers, Jack Englebert, and Stanley Price, who, as the members of the Architectural Control Committee (“the Committee”) of the Maxwell Crossing Subdivision (“the subdivision”), prohibited the Turners from building an accessory building on their residential lot in the subdivision.
The Turners own and reside upon a lot in the subdivision that adjoins a lot owned and resided upon by Sellers. The lots in the subdivision are governed by restrictive covenants that are enforced by the Committee. In 2000, the Turners began building a house and other improvements on their property; the original plans called for constructing a garage/shop building on the side of their house near the boundary between their lot and Sellers’s lot. Sellers sued the Turners in the Tuscaloosa Circuit Court to enjoin the Turners from constructing the proposed garage/shop building. Finding that the proposed building would be in violation of two of the subdivision’s restrictive covenants, the circuit court, on May 24, 2001, issued an order permanently enjoining the Turners from building the proposed garage/shop building.[1] The Turners did not appeal that decision.
Subsequently, in November 2001, the Turners submitted another proposal to the Committee for approval of an accessory building that the Turners intended to use as a playroom for their children and as a storage room. The building was to be constructed with the same materials as the house, was to be heated and cooled by the existing house’s air system, and was to be accessed from their house by a covered, but open, walkway approximately 10 feet wide. The roof covering the walkway was to extend from the existing house’s roof to the roof of the proposed building. The Committee denied approval of the proposal on the ground that it involved the construction of an accessory building that would violate paragraph 6 of the subdivision’s restrictive covenants.
Paragraph 6 of the restrictive covenants provides:
“(6) ACCESSORY BUILDINGS. Any building including but not limited to a pump house, or storage area must be of a permanent nature, and must be kept in good repair. Approval as to the materials and placement of said buildings must be granted by the Architec *303 tural Control Committee. No roll-type roofing or tin may be used for exterior finish. All such outbuildings, including detached garages, shall be located to the rear of any residential buildings located on the lot. No trailer, basement, tent, shack, garage, barn, or other outbuilding of a temporary character shall be erected or used on any lot unless first approved in writing by the Architectural Control Committee.”
(Emphasis added.) The Committee determined that the proposed building violated paragraph 6 because it would not be built “to the rear of’ the Turners’ residence.
The Turners filed suit against the Committee members on December 19, 2001, seeking a declaration that they had a right to construct the proposed building and seeking an injunction to prevent the Committee from interfering with such construction. Evidence was presented ore tenus; the parties stipulated that the only issue before the trial court was “whether the proposed structure is in violation of the Maxwell Crossing restrictive covenants, specifically whether it is prohibited by Paragraph 6.” The Turners presented evidence at the trial that indicated that locating the accessory building to the rear of their residence would be difficult because there is a significant drop-off in elevation behind their house. Nonetheless, the trial court determined that the proposed addition violated paragraph 6 of the restrictive covenants because the addition was not an “integral part of the residence” and, therefore, was an accessory building/outbuilding. The trial court also held that the Committee had not been arbitrary or capricious in disapproving the proposal and that the Turners were not entitled to relief under the “relative hardship” test. The Turners appeal.
“Where evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment.”
American Petroleum Equip. & Constr., Inc. v. Fancher, 708 So.2d 129, 132 (Ala.1997) (citations omitted).
The Turners take two positions on appeal: (1) paragraph 6 does not apply to the addition they proposed, and (2) even if paragraph 6 does apply, they are entitled to equitable relief from the restrictive covenant based on the “relative hardship” test.
With regard to their first position, the Turners initially contend that the restriction in the fourth sentence of paragraph 6 — that “such outbuildings” must be “to the rear of’ the residential building — does not apply to permanent structures, such as that which they propose to build. The Turners argue that the reference in the fourth sentence to “such outbuildings” is a reference to the type of outbuilding referenced in the fifth and last sentence of paragraph 6, namely, “outbuilding[s] of a temporary character.” The Turners add that paragraph 6 should be read in such a fashion because, they point out, “in construing restrictive covenants, all doubts must be resolved against the restriction and in favor of free and unrestricted use of property.” Hines v. Heisler, 439 So.2d 4, 5 (Ala.1983).
While it is true that ambiguous language in restrictive covenants should be resolved against the restriction, it also remains true that “where there is no ambiguity in the language of the restrictive covenant in question, that language-is enti- *304 tied to be given the effect of its plain and manifest meaning.” Tubbs v. Brandon, 374 So .2d 1358, 1361 (1979). A plain reading of paragraph 6 does not yield the interpretation urged upon us by the Turners.
The title and the subject of paragraph 6 is “Accessory Buildings.” The trial court reasonably could have concluded that the buildings discussed in paragraph 6 are considered to be “accessory buildings,” even though no formal definition of that term is provided in the restrictive covenants. The first sentence following the title dictates that “[a]ny building including but not limited to ... a storage area must be of a permanent nature.... ” The Turners admit that their proposed building is to be used in part as a storage area for their children’s belongings, and it is not disputed that it is a permanent structure. From those facts and the fact that the proposed building is not an integral part of the residence, the trial court reasonably concluded that the Turners’ proposed building is an “accessory building.”
Paragraph 6 subsequently states that “[a]U such outbuildings ... shall be located to the rear of any residential buildings located on the lot.” (Emphasis added.) “All such outbuildings” clearly refers back to a previous sentence of paragraph 6, in this case the first sentence. Thus, a plain reading of paragraph 6 to this point indicates that, in general, the term “outbuilding” is simply another term for an “accessory building,” and that the Turners’ permanent accessory building, like all other outbuildings, would be subject to the “to the rear” restriction.
The final sentence of paragraph 6 provides nothing to contradict this interpretation. That sentence states that “[n]o trailer, basement, tent, shack, garage, barn, or other outbuilding of a temporary character shall be erected or used on any lot unless first approved in writing by [the Committee].” (Emphasis added.) Rather than defining “outbuildings” in general, as the Turners suggest, the last sentence of paragraph 6 focuses on a subclass of outbuildings, those “of a temporary character.” Recognizing the different nature of those temporary outbuildings in comparison to the outbuildings “of a permanent nature” discussed in previous sentences of paragraph 6, the last sentence dictates that those temporary outbuildings may not be erected or used at all without approval in writing from the Committee; whereas, construction of permanent outbuildings merely requires Committee approval of the “materials and placement of said buildings.”
While paragraph 6 thus delineates exactly what aspects of both permanent and temporary accessory buildings the Committee must approve, it leaves no doubt that “[a]ll such outbuildings” must be located “to the rear of any residential buildings.” (Emphasis added.) The result is that a plain reading of paragraph 6 restricts the building of accessory buildings like the one proposed by the Turners “to the rear of’ the residential building on their lot.
In an “alternative” argument, the Turners point out that the “to the rear” restriction applies specifically to “[a]ll such outbuildings, including detached garages ....” (Emphasis added.) They contend, therefore, that the “to the rear” provision of paragraph 6 was intended to refer only to “detached” structures. They argue that the accessory building they propose to construct will be “attached” to the main residence and is therefore not subject to this provision.
However, there is nothing inherent in the terms accessory building or outbuilding, or in their use in paragraph 6 of *305 the restrictive covenants, that dictates that those terms must refer only to buildings completely detached from the main residential building.
Further, the fact that “detached garages” are “included” in the kind of buildings considered accessory buildings for purposes of the “to the rear” provision does not mean that only detached buildings qualify as accessory buildings. Our Supreme Court has explained that the word “including” generally “is not to be regarded as limitational or restrictive, but merely as a particular specification of something to be included or to constitute a part of some other thing....” Sims v. Moore, 288 Ala. 630, 635, 264 So.2d 484, 487 (1972).
In their brief on appeal to this court, the members of the Committee note that the proposed building will be located on the same concrete slab that was poured for the placement of the outbuilding that was rejected by the trial court in the first lawsuit. They argue that the proposed building will be structurally independent from the Turners’ existing residential building and that it will share no common walls or doors with the existing residential building. Moreover, they argue that
“attachment or detachment is not the issue here. The generally accepted definition of an ‘accessory building’ or ‘outbuilding’ (Paragraph 6 uses these terms synonymously), for purposes of setback or building location restrictions contained in restrictive covenants or zoning ordinances, is a building standing apart from but appurtenant to or adjoining a dwelling or other main building and whose use is incidental to or in connection with the main building. See, Bruce v. McClees, [110 N.J.Eq. 92, 158 A. 849 (1932)]; Daughters of St. Paul, Inc. v. Zoning Board of Appeals, [17 Conn.App. 53, 549 A.2d 1076 (1988)]; Marengo Hills, Inc. v. Watson, 368 So.2d 856 (Ala.1979); Firth v. Marovich, [160 Cal. 257,] 116 P. 729 (1911); Words & Phrases, ‘Accessory building,’ ‘Outbuilding.’ This definition fits precisely the Turners’ proposed accessory building.”
The members of the Committee conclude their argument as to this issue by contending that:
“[A]n accessory building or outbuilding does not lose its character as such for purposes of the applicable setback or building location restrictions, merely because it has been attached to the main building by, for example, the construction of a covered breeze way, particularly where the motivation for such construction is to circumvent the applicable restrictions. See Daughters of St. Paul, Inc. v. Zoning Board of Appeals, supra; Kamp v. Stebens, 517 N.W.2d 227 (Iowa App. 1994) (holding garage was ‘accessory structure’ in violation of zoning ordinance and not a part of the house where connecting ‘breeze way’ was not obvious subterfuge to circumvent zoning restrictions).”
The trial court held as follows:
“After reviewing paragraph six of the restrictive covenants, the Court holds that it is not ambiguous, and prior approval of the location of [the Turners’] building would have to be secured by the Architectural Control Committee, unless the proposed building is part of the residence.
“Considering the law cited, it is the opinion of this court that any appellate court of the state of Alabama would determine that the building is not an integral part of the residence. This court holds that the building is an accessory building as contemplated by paragraph six of the restrictive covenants, and subject to said paragraph six.”
*306 We conclude that the record before us supports the conclusions reached by the trial court, and we likewise reject the Turners’ “alternative” argument as to paragraph 6.
Finally, the Turners take the position that, even if the restrictive covenant listed in paragraph 6 prohibits their proposed building, they are entitled to relief from the restrictive covenant under the “relative hardship” test.
“Under [the relative-hardship] test a covenant will not be enforced if to do so would harm one landowner without substantially benefiting another landowner....
“ ‘Broadly speaking, the enforcement of building restrictions is governed by equitable principles, and will not be decreed if, under the facts of the particular case, it would be inequitable and unjust....
“ ‘The equitable enforcement of a restriction can be invoked only for the purpose of protecting the benefit which it was the object of the covenant to afford. If the restrictive covenant has ceased to have any beneficial or substantial value to the ... property, it can form no ground for equitable relief.... [I]f the defendant will be subject to great hardship or the consequences would be inequitable, relief will be denied.’ ”
Lange v. Scofield, 567 So.2d 1299, 1302 (Ala.1990) (quoting 20 Am.Jur.2d Covenants, Conditions, & Restrictions § 313, at 876-77 (1965)).
The Turners point out that the trial court found that “[tjhere is a significant drop-off of elevation behind the [Turners’] home, and hauling in enough dirt to level the terrain, so that the building could be located there, would be cost prohibitive.” That being the case, the Turners contend that the restrictive covenant requiring that accessory buildings must be “to the rear of’ their home causes great hardship to the unrestricted use of their land. Furthermore, the Turners contend, the only evidence presented at trial concerning the benefits of this restrictive covenant came from the testimony of Sellers, who testified that the accessory building would be very close to his property and conceivably could produce a lot of noise, which reduces property values. They argue that this evidence does not sufficiently outweigh the hardship of being prevented from using their property in the manner they wish.
However, as the trial court observed, the equity of permitting relief from the restrictive covenant in this case must be evaluated in broader terms than just its effect on the adjacent landowner, Sellers. Paragraph 6, along with all of the other restrictive covenants, applies to the entire subdivision and is intended to control the development of the neighborhood. In this way, the restrictive covenant in question benefits the entire subdivision. The Turners knew that there were restrictions on the free use of their lot when they purchased it. To date, the trial court found, the Committee has not allowed any other variances from the restrictive covenants. Should an exception be permitted in this case, there would be no reason why neighbors who have similar drop-offs in the back of their properties should not be given similar relief from the restrictive covenant, thereby defeating the purpose of having the restrictive covenants. Moreover, the weight of Sellers’s testimony regarding the effect such an accessory building would have upon his property is a matter best left to the trial court. See, e.g., Ex Parte Golden Poultry Co., 772 So.2d 1175, 1177 (Ala.2000) (“The Court of Civil Appeals is authorized to determine whether the trial court’s decision is supported by sufficient evidence, but it is not *307 authorized to independently weigh the evidence.”). There was sufficient evidence presented for the trial court to determine that it would be inequitable to grant the Turners relief from the restrictive covenant in question because of the harm it could do to the subdivision in general and to Sellers’s property in particular.
Because a plain reading of the restrictive covenant in question prohibits the accessory building from being located as proposed by the Turners, and because the Turners are not entitled to relief from that restrictive covenant under the “relative hardship” test, we affirm the judgment of the trial court entered in favor of the Committee members and against the Turners.
AFFIRMED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.

. The Turners completed the “pouring” of the foundational "slab” for the proposed garage/shop building before the injunction was entered.