MOORE, Judge.
Grove Hill Homeowners’ Association, Inc. (“the Association”), appeals from a judgment entered by the Lee Circuit Court denying the Association’s request for a permanent injunction requiring William Rice and Laura Rice to remodel their driveway to comply with § 6.20 of the Grove Hill Subdivision Declaration of Covenants, Conditions, and Restrictions (“the restrictive covenants”).
In 2008, the Rices purchased property and a house located in the Grove Hill subdivision. On April 28, 2008, the Association sent a letter to the Rices welcoming them to the neighborhood. The Association attached a copy of the restrictive covenants to the letter, which also referred the reader to a Web site for further “neighborhood information.” Section 6.20 of the restrictive covenants provides:
“6.20 Driveways and Sidewalks. All driveways and sidewalks for each Lot or Dwelling shall be constructed of asphalt or concrete. Other materials may be used but only if approved by the [Architectural Review Committee], All driveways and sidewalks shall be paved; chert, gravel, and loose stone driveways and sidewalks are prohibited. Provided, however, that the foregoing shall not be applicable to any of the roadways within the Development which may constitute Common Areas.”
(Bold typeface in original.) Section 5.05(a) of the restrictive covenants states that no improvements, including driveways, may be made to the exterior appearance of any lot without preapproval of the Architectural Review Committee (“the ARC”).
At the time the Rices purchased the property, the construction of the house had not been completed, the house had been abandoned by the contractor for four months, and the house was in foreclosure. The contractor had built a narrow concrete driveway running from the street to the house. William testified that, at the time the Rices purchased the property, the driveway was stained with red mud and contained a long crack. No one from the Association or the ARC instructed the Rices that the driveway needed to be repaired or remodeled, but Laura told William that they needed to do something to correct the “eyesore.”
William testified that he considered several options to address the driveway problem, some of which he considered too expensive and others of which he deemed impractical. The Rices decided not to completely replace the driveway; instead, they decided to add a secondary pad to the driveway and to top the driveway with liquid asphalt and loose pea gravel. Under that plan, the driveway would retain its original concrete base. They contracted with a landscaping company, which performed the work. In violation of § 5.05 of the restrictive covenants, the Rices did not notify the ARC and obtain its approval before undertaking the modifications to the driveway.
In late November or early December 2008, John Price, the president of the Association, received an anonymous complaint about the driveway. Barbara Ar-rington, the property manager, sent an email to William asking whether the driveway had been completed. After receiving information that the driveway had been completed, Price contacted Jack Downs, then chairman of the ARC, about the issue. Downs inspected the driveway and opined to the members of the Association’s board at a December 2008 meeting that the driveway did not comply with § 6.20.
In January 2009, Diane Tillery assumed the role of ARC chairman from Downs. Tillery talked with the Rices and showed them the restrictive covenants. Tillery *612 testified that, during that meeting, the Rices asked for a variance. Tillery agreed to discuss the matter with the ARC. The Rices thereafter submitted a survey of 21 neighbors, all of whom approved of the driveway, along with photographs of the driveway before the modifications and a description of the modification process. Tillery and the other four members of the ARC inspected the driveway. The ARC subsequently met and unanimously decided that the driveway did not comply with § 6.20. Tillery testified that the ARC did not discuss granting the Rices a variance; however, a letter dated January 19, 2009, which the Association introduced into evidence, indicates that the ARC rejected the Rices’ request for the variance.
Over the next month, Tillery exchanged e-mails and letters with the Rices and Laura’s father, an attorney. The Rices sought a face-to-face meeting with the ARC to discuss their view that the modifications had actually improved the condition of the driveway, but the ARC did not agree to any “appeal.” The Association, on the other hand, sought information on the Rices’ plans to remodel the driveway in compliance with § 6.20. After receiving a letter from Laura’s father asking her to quit threatening the Rices, Tillery contacted the Association’s attorney. That attorney filed a complaint against the Rices on April 7, 2009, seeking an injunction and damages. The Rices answered on May 11, 2009, and counterclaimed for attorney fees under the Alabama Litigation Accountability Act (“the ALAA”). See Ala.Code 1975, §§ 12-19-270 to-276.
The trial court rejected the Association’s request for a preliminary injunction on May 20, 2009. The case proceeded to trial on June 5, 2009. At the trial, the Association introduced photographs showing loose gravel from the driveway scattered in the street. William admitted that loose gravel from the driveway had gotten onto the street. Tillery testified that the ARC was concerned about that problem as well as the aesthetic difference between the Rices’ driveway and all the other driveways in the neighborhood and its potential impact on property values. Tillery testified that the Association wanted the Rices to comply with § 6.20 no matter the cost or disruption. William testified that it would cost $15,000 to make the changes the Association was demanding and that the Rices had taken no steps to change the driveway.
The Rices called Billy Cleveland, one of the developers of the Grove Hill subdivision, to testify. Cleveland testified that he and his brother had signed the restrictive covenants. According to Cleveland, the restrictive covenants were based on similar declarations from previous subdivisions he had developed. Cleveland stated that “the city” required the use of gravel driveways during home construction in the subdivision. Cleveland said that the purpose of § 6.20 was to assure that contractors and homeowners did not simply leave the gravel driveways in place upon completion of construction. Cleveland testified that he and his brother had served as the ARC for a time and that, during that time, he did not approve any gravel driveways. However, he testified that he had inspected the driveway at issue and that he considered it to be constructed in a workmanlike manner, aesthetically pleasing, similar to other driveways in “high-end” neighborhoods in the area, and compliant with § 6.20. Cleveland stated that, in his opinion, the existence of the driveway would not negatively impact property values or home sales. On cross-examination, Cleveland admitted that other sections of the restrictive covenants dealt more specifically with construction issues.
The trial court entered a judgment on July 14, 2009, stating, in pertinent part:
*613 “The relevant covenant specifically prohibits driveways made of gravel or loose stone, and specifically allows driveways constructed of concrete or asphalt. The evidence at trial tended to show that the [Rices’] driveway is in fact a concrete driveway covered with asphalt and gravel, a combination not contemplated in the covenant. The subdivision’s builder, who drafted the covenants, testified that the purpose of the provision at issue was intended to prevent construction crews from leaving a rough gravel driveway. The [Rices’] driveway has a solid concrete ramp to the street and a solid brick or stone border in addition to the solid concrete foundation. It is not a rough gravel driveway of the sort used by construction crews, nor is it the large-diameter gravel commonly used in rural areas. In fact a large portion of the gravel is fastened in place by asphalt sprayed to the surface of the concrete. It is the opinion of the Court that the driveway conforms to the covenants.”
Based on those findings, the trial court denied the relief requested by the Association. The trial court further denied the Rices’ claim for attorney fees under the ALAA. The Association filed a timely notice of appeal to this court on August 11, 2009.
On appeal, the Association argues that the trial court used an incorrect standard for reviewing the decision of the ARC, erred in admitting Cleveland’s testimony regarding the purpose of § 6.20, and erred in determining that the construction of the driveway did not violate the restrictive covenants.
“To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not dis-serve the public interest.”
TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1242 (Ala.1999), overruled on other grounds, Holiday Isle, LLC v. Adkins, 12 So.3d 1173 (Ala.2008). By finding that the driveway complied with § 6.20, the trial court concluded that the Association had failed on the merits, so it denied the request for an injunction. The Association contends that the trial court should have deferred to the judgment of the ARC, see Saunders v. Thorn Woode P’ship, L.P., 265 Ga. 703, 704, 462 S.E.2d 135, 137 (1995) (“Where, as here, the declaration delegates decision-making authority to a group and that group acts, the only judicial issues are whether the exercise of that authority was procedurally fair and reasonable, and whether the substantive decision was made in good faith, and is reasonable and not arbitrary and capricious.”), and should have found that the Rices had violated the unambiguous terms of § 6.20.
We do not consider whether the trial court erred in failing to apply the deferential arbitrary-and-capricious standard of review to the ARC’S determination that the driveway violated § 6.20 because we conclude that the Association failed to preserve that issue for appellate review. In order to preserve an alleged error of law for appellate review, the appellant must bring that alleged error to the attention of the trial court and receive an adverse ruling. See Cottrell v. National Collegiate Athletic Ass’n, 975 So.2d 306, 349 (Ala.2007). The terms of the judgment disclose that the trial court did not review the case based on the arbitrary-and-eapri-cious standard but, instead, reviewed the issue whether the driveway complied with § 6.20 de novo. If the Association contended the trial court erred in that regard, *614 it was incumbent on the Association to file a postjudgment motion specifically objecting to the failure to apply the arbitrary- and-capricious standard in order to give the trial court an opportunity to rule on and, if necessary, correct that error. See T.J.H. v. S.N.F., 960 So.2d 669 (Ala.Civ.App.2006) (declining to consider issue that circuit court used inappropriate standard for modifying custody when father failed to present argument to circuit court and raised issue for first time on appeal). Because the Association did not file any post-judgment motion, the trial court did not rule on the matter and that issue cannot now be raised in this court. Shiver v. Butler County Bd. of Educ., 797 So.2d 1086, 1089 (Ala.Civ.App.2000) (holding that an appellate court will not consider an issue on which the trial court was not given the opportunity to rule).
As to whether the driveway violated § 6.20, that determination depends on the meaning of that restrictive covenant.
“Restrictive covenants will be recognized and enforced when established by contract, but they are not favored and will be strictly construed. Carpenter v. Davis, 688 So.2d 256, 258 (Ala.1997). Our Supreme Court has held that
“ ‘in construing restrictive covenants, all doubts must be resolved against the restriction and in favor of free and unrestricted use of property. However, effect will be given to the manifest intent of the parties when that intent is clear.... Furthermore, restrictive covenants are to be construed according to the intent of the parties in the light of the terms of the restriction and circumstances known to the parties.’
“Hines v. Heisler, 439 So.2d 4, 5-6 (Ala.1983). If ‘there is no inconsistency or ambiguity within a restrictive covenant, the clear and plain language of the covenant is enforceable by injunctive relief.’ Carpenter, 688 So.2d at 258.
“ ‘ “[W]hether or not a written contract is ambiguous is a question of law for the trial court.” “An ambiguity exists where a term is reasonably subject to more than one interpretation.” “The mere fact that adverse parties contend for different constructions does not in itself force the conclusion that the disputed language is ambiguous.” ’
“Ex parte Awtrey Realty Co., 827 So.2d 104, 107 (Ala.2001) (citations omitted). Moreover, the parties cannot create ambiguities by setting forth ‘strained or twisted reasoning.’ Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So.2d 687, 692 (Ala.2001). Nor does an undefined word or phrase create an inherent ambiguity. Id.”
Hipsh v. Graham Creek Estates Owners Ass’n, 927 So.2d 846, 848-49 (Ala.Civ.App.2005).
“In written instruments, two types of ambiguities can arise: a patent ambiguity and a latent ambiguity. McCollum v. Atkins, 912 So.2d 1146, 1148 (Ala.Civ.App.2005). A patent ambiguity results when a document, on its face, contains unclear or unintelligible language or language that suggests multiple meanings. Thomas v. Principal Fin. Group, 566 So.2d 735, 739 (Ala.1990). On the other hand, ‘[a]n ambiguity is latent when the language employed is clear and intelligible and suggests but a single meaning but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings.’ Id."
Smith v. Ledbetter, 961 So.2d 141, 145 (Ala.Civ.App.2006).
*615 We do not perceive any patent ambiguity in § 6.20. The first sentence of § 6.20 provides that all driveways must be constructed of asphalt or concrete. The second sentence allows the use of other materials with the approval of the ARC. The first clause of the third sentence requires all driveways to be paved. The second clause of the third sentence prohibits chert, gravel, and loose stone driveways. Reading those clauses together, § 6.20 requires all driveways in the subdivision to be constructed of concrete or asphalt only unless the ARC preapproves the use of other material; however, in no event can the ARC allow an unpaved driveway made of chert, gravel, or loose stone.
The trial court found a latent ambiguity in that the Rices’ driveway consists of a mixture of concrete, asphalt, and gravel. However, whether a latent ambiguity exists is a question of law we review de novo. See Smith, 961 So.2d at 144. We do not believe the construction of a driveway partly made of gravel renders any portion of § 6.20 doubtful in meaning. The first two sentences plainly address that situation by prohibiting such a mixture without the preapproval of the ARC. The third sentence stating that driveways should not be entirely composed of gravel does not apply to the Rices’ driveway. Even if there were a latent ambiguity and we relied on Cleveland’s testimony that he intended the third sentence of § 6.20 to prevent gravel driveways, that testimony does not imply that driveways made partially of gravel would be permitted under the preceding sentences without the preap-proval of the ARC. Rather, we would have to resolve that ambiguity by applying the more specific provision. See Ward v. Check Into Cash of Alabama, LLC, 981 So.2d 434, 438 (Ala.Civ.App.2007) (“One rule of contract construction holds that a specific provision prevails over a general provision relating to the same subject matter.”).
We hold that the trial court erred in finding that the Rices’ driveway did not violate § 6.20 of the restrictive covenants. Based on that error, the trial court did not address the remaining requirements for a preliminary injunction. Therefore, we must reverse the judgment and remand the ease to the trial court to consider whether the Association carried its burden of proving the remaining elements necessary to obtain the permanent injunction it requested. Based on our reversal, we hold that the Association’s evidentiary arguments are moot.
REVERSED AND REMANDED.
PITTMAN and THOMAS, JJ., concur.
THOMPSON, P.J., and BRYAN, J., concur in the result, without writings.