MOORE, Judge.
This court’s opinion of July 29, 2011, is withdrawn, and the following is substituted therefor.
Grove Hill Homeowners’ Association, Inc. (“the Association”), appeals from a judgment of the Lee Circuit Court (“the trial court”) declining to issue a permanent injunction enjoining William Rice and Laura Rice from maintaining a driveway on their property that does not comply with § 6.20 of the Grove Hill Subdivision Declaration of Covenants, Conditions, and Restrictions (“the restrictive covenants”).
This is the second time this case has been before this court. See Grove Hill Homeowners’ Ass’n v. Rice, 43 So.3d 609 (Ala.Civ.App.2010) (“Grove Hill ”). In Grove Hill, we set forth the following facts pertinent to the present appeal:
“In 2008, the Rices purchased property and a house located in the Grove Hill subdivision. On April 23, 2008, the Association sent a letter to the Rices welcoming them to the neighborhood. The Association attached a copy of the restrictive covenants to the letter, which also referred the reader to a Web site for further ‘neighborhood information.’ Section 6.20 of the restrictive covenants provides:
“ ‘6.20 Driveways and Sidewalks. All driveways and sidewalks for each Lot or Dwelling shall be constructed of asphalt or concrete. Other materials may be used but only if approved by the [Architectural Review Committee]. All driveways and sidewalks shall be paved; chert, gravel, and loose stone driveways and sidewalks are prohibited. Provided, however, that the foregoing shall not be applicable to any of the roadways within the Development which may constitute Common Areas.’
“(Bold typeface in original.) Section 5.05(a) of the restrictive covenants states that no improvements, including driveways, may be made to the exterior appearance of any lot without preapproval of the Architectural Review Committee (‘the ARC’).
“At the time the Rices purchased the property, the construction of the house had not been completed, the house had been abandoned by the contractor for four months, and the house was in foreclosure. The contractor had built a narrow concrete driveway running from the street to the house. William testified that, at the time the Rices purchased the property, the driveway was stained with red mud and contained a long crack. No one from the Association or the ARC instructed the Rices that the driveway needed to be repaired or remodeled, but *733 Laura told William that they needed to do something to correct the ‘eyesore.’
“William testified that he considered several options to address the driveway problem, some of which he considered too expensive and others of which he deemed impractical. The Rices decided not to completely replace the driveway; instead, they decided to add a secondary pad to the driveway and to top the driveway with liquid asphalt and loose pea gravel.[1] Under that plan, the driveway would retain its original concrete base. They contracted with a landscaping company, which performed the work. In violation of § 5.05 of the restrictive covenants, the Rices did not notify the ARC and obtain its approval before undertaking the modifications to the driveway.
“In late November or early December 2008, John Price, the president of the Association, received an anonymous complaint about the driveway. Barbara Arrington, the property manager, sent an e-mail to William asking whether the driveway had been completed. After receiving information that the driveway had been completed, Price contacted Jack Downs, then chairman of the ARC, about the issue. Downs inspected the driveway and opined to the members of the Association’s board at a December 2008 meeting that the driveway did not comply with § 6.20.
“In January 2009, Diane Tillery assumed the role of ARC chairman from Downs. Tillery talked with the Rices and showed them the restrictive covenants. Tillery testified that, during that meeting, the Rices asked for a variance. Tillery agreed to discuss the matter with the ARC. The Rices thereafter submitted a survey of 21 neighbors, all of whom approved of the driveway, along with photographs of the driveway before the modifications and a description of the modification process. Tillery and the other four members of the ARC inspected the driveway. The ARC subsequently met and unanimously decided that the driveway did not comply with § 6.20. Tillery testified that the ARC did not discuss granting the Rices a variance; however, a letter dated January 19, 2009, which the Association introduced into evidence, indicates that the ARC rejected the Rices’ request for the variance.
“Over the next month, Tillery exchanged e-mails and letters with the Rices and Laura’s father, an attorney. The Rices sought a face-to-face meeting with the ARC to discuss their view that the modifications had actually improved the condition of the driveway, but the ARC did not agree to any ‘appeal.’ The Association, on the other hand, sought information on the Rices’ plans to remodel the driveway in compliance with § 6.20. After receiving a letter from Laura’s father asking her to quit threatening the Rices, Tillery contacted the Association’s attorney. That attorney filed a complaint against the Rices on April 7, 2009, seeking an injunction and damages. The Rices answered on May 11, 2009, and counterclaimed for attorney fees under the Alabama Litigation Accountability Act (‘the ALAA’). See Ala.Code 1975, §§ 12-19-270 to -276.
“The trial court rejected the Association’s request for a preliminary injunction on May 20, 2009. The case pro *734 ceeded to trial on June 5, 2009. At the trial, the Association introduced photographs showing loose gravel from the driveway scattered in the street. William admitted that loose gravel from the driveway had gotten onto the street. Tillery testified that the ARC was concerned about that problem as well as the aesthetic difference between the Rices’ driveway and all the other driveways in the neighborhood and its potential impact on property values. Tillery testified that the Association wanted the Rices to comply with § 6.20 no matter the cost or disruption. William testified that it would cost $15,000 to make the changes the Association was demanding and that the Rices had taken no steps to change the driveway.”
43 So.3d at 611-12.
The trial court entered a judgment on July 14, 2009, determining that the driveway was “a concrete driveway covered with asphalt and gravel, a combination not contemplated in the covenant,” determining that the driveway conformed to the covenants, and denying the relief requested by the Association. The Association appealed the trial court’s judgment to this court on August 11, 2009. In Grove Hill, this court set out the standard for issuing a permanent injunction:
“ ‘To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not disserve the public interest.’ ”
43 So.3d at 613 (quoting TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1242 (Ala.1999), overruled on other grounds, Holiday Isle, LLC v. Adkins, 12 So.3d 1173 (Ala.2008)). This court then determined that the trial court had erred in determining that § 6.20 contained a latent ambiguity, and we concluded that the Rices’ driveway violated § 6.20 of the restrictive covenants and, therefore, that the Association had demonstrated success on the merits. 43 So.3d at 615. We reversed the trial court’s judgment and remanded the case for the trial court to consider “whether the Association carried its burden of proving the remaining elements necessary to obtain the permanent injunction it requested.” Id.
Upon remand, the Association filed a motion for the entry of a judgment in its favor. The parties filed briefs on remand in support of their respective arguments, and, on May 28, 2010, the trial court entered an order that stated, in pertinent part:
“Attorneys for the parties appeared before the Court for a hearing on April 30, 2010. The parties have agreed that no evidentiary hearing is required to comply with the order remanding the case back to the Circuit Court. Therefore, the Court enters this ruling based on the testimony and evidence presented on July 6, 2009.
“The Court of Civil Appeals has tasked the Circuit Court with determining whether [the Association] ha[s] met the remaining standards as set forth in TFT, Inc. v. Warning Sys., Inc., necessary for the issuance of a permanent injunction.
“‘To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not disserve the public interest.’
*735 “751 So.2d 1238, 1242 (Ala.1999), overruled on other grounds, Holiday Isle, LLC v. Adkins, 12 So.3d 1173 (Ala.2008). The Court of Civil Appeals ruled that [the Association] has indeed demonstrated success on the merits, and therefore has met the first prong of the TFT test.
“However, [the Association] ha[s] a more difficult time meeting the second prong of the TFT standard since [it] must show a substantial threat of irreparable injury if the injunction is not granted. The fact that the driveway is different from other driveways in the neighborhood is not sufficient to indicate an injury or a threat of an injury. Ms. Diana Tillery, the chair of the Architectural Review Committee, indicated that the Committee based [its] decision on the black-letter wording of the covenant. She did not mention any actual or threatened injury to the Homeowners’ Association or any individual property owner. Ms. Tillery also stated that the basis of the decision was aesthetics and the possibility of loose stone on the street. However, the president of the Homeowners’ Association, Mr. John Price, stated that loose stone in the common areas of the neighborhood was acceptable. There was no testimony of any reports of damage or injury in the neighborhood due to loose stone on the street. No witness for [the Association] testified about a decrease in property values in the neighborhood due to the driveway. Mr. Billy Cleveland, the developer of the subdivision, stated that the driveway would not affect property value. Moreover, [the Association] did not produce evidence that [the Rices’] immediate neighbors — those who would be most affected by the driveway’s aesthetic value — found the driveway objectionable. Therefore, aesthetic value is the only injury [the Association] ha[s] truly attempted to show, and the aesthetic value of the driveway is improved from the original condition of the driveway.
“[The Association] ha[s] cited Tubbs v. Brandon, 374 So.2d 1358 (Ala.1979), and Taylor v. Kohler, 507 So.2d 426 (Ala.1987), for the tenet, ‘The right to enjoin [a] breach will not depend on whether the covenantee will be damaged by the breach.’ While neither Tubbs nor Taylor have been overturned, later caselaw suggests that the Alabama courts have not continued to strictly follow that particular holding of Tubbs. More modern caselaw adopts the relative hardship test as outlined in Lange v. Scofield, 567 So.2d 1299, 1302 (Ala.1990): ‘[A] covenant will not be enforced if to do so would harm one landowner without substantially benefiting another landowner.’ The holding in Lange essentially matches the third, of the four prongs of the TFT test for the issuance of a permanent injunction.
“In this instance, despite the fact that [the Rices] did incur the expenses on their own, their only feasible option would have been to tear up the old driveway and install a new one. Mr. Rice testified that it would cost an estimated $15,000.00 to tear up the driveway and replace it. If [the Rices] were required to change the current driveway, the only option at this point would also be to tear up the existing driveway and replace it entirely, also at a cost of $15,000.00. There was no testimony concerning any other possible remedies at trial. Enforcing the covenant against [the Rices] as strictly as [the Association] desire[s] would harm [the Rices] substantially more than it would benefit [the Association]. See Lange. Moreover, the aesthetic harm to [the Association] is far less than the monetary harm [the Rices] would incur in replacing the entire driveway. Therefore, [the Associ *736 ation] ha[s] not met the second prong of the TFT standard.
“The fourth prong of the TFT standard involves disservice to the public interest. The public interest would likely not be disserved by granting this injunction. The only possible members of the public that would be affected by a ruling either way in this case would be potential buyers of property in the subdivision. Those potential buyers would likely not be swayed one way or the other in their decision to purchase by the nature of the defendants’ driveway. However, they would also likely not be swayed by a plain concrete driveway. Therefore, [the Association] ha[s] met the fourth prong of the TFT test.
“Judgment is entered for [the Rices]. [The Rices] have not proved damages under the Litigation Accountability Act. Each party is to bear its own costs and fees.”
(Footnote and references to the record omitted.)
On June 25, 2010, the Association filed a Rule 59(e), Ala. R. Civ. P., motion, arguing that the “relative-hardship test” is not to be applied in the enforcement of neighborhood restrictive covenants. The Rices filed an objection to the Association’s motion, and the Association filed a response to the Rices’ objection. On August 20, 2010, the trial court entered an order allowing the parties 30 days to submit additional caselaw regarding the application of the “relative-hardships doctrine,” noting that the Association’s postjudgment motion was being kept under advisement by agreement. The Association filed a supplement to its postjudgment motion on September 8, 2010. The Association’s postjudgment motion was denied by operation of law on September 28, 2010. The Association filed a notice of appeal to the Alabama Supreme Court on October 29, 2010; that court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
On appeal, the Association argues that the trial court erred in balancing the equities to determine whether it should grant the injunctive relief requested by the Association. The Association quotes several opinions in which Alabama appellate courts have stated that “the mere breach of the covenant is a sufficient basis for interference by injunction.” Tubbs v. Brandon, 374 So.2d 1358, 1361 (Ala.1979) (citing Reetz v. Ellis, 279 Ala. 453, 186 So.2d 915 (1966)); see also Willow Lake Residential Ass’n v. Juliano, 80 So.3d 226 (Ala.Civ.App.2010). Based on that statement, the Association concludes that an injunction must issue in every case in which a breach of a restrictive covenant is proven, regardless of any equitable considerations. We disagree with that general statement of the law.
In Lange v. Scofield, 567 So.2d 1299 (Ala.1990), our supreme court expressly adopted the relative-hardship test, an equitable doctrine that generally provides that a restrictive covenant “will not be enforced if to do so would harm one landowner without substantially benefiting another landowner.” 567 So.2d at 1302 (citing 5 Richard R. Powell, The Law of Real Property § 679(3) (1987 rev. ed.)). Under the relative-hardship test as expressed in Lange, it is possible that the breach of a restrictive covenant would not automatically require the issuance of an injunction. As the supreme court explained in Lange:
“The factors to be considered in applying this test are well stated in 20 Am. Jur.2d Covenants, Conditions, & Restrictions § 313, at 876-77 (1965):
“ ‘Broadly speaking, the enforcement of building restrictions is governed by equitable principles, and will not be decreed if, under the facts of the particular case, it would be inequi *737 table and unjust.... The complainant’s right to insist on the restrictive covenant must be clear and satisfactory....
“‘The equitable enforcement of a restriction can be invoked only for the purpose of protecting the benefit which it was the object of the covenant to afford. If the restrictive covenant has ceased to have any beneficial or substantial value to the ... property, it can form no ground for equitable relief.... [I]f the defendant will be subject to great hardship or the consequences would be inequitable, relief will be denied.’ ”
567 So.2d at 1302. Based on Lange, if, upon a balancing of the equities, a court determines that the harm resulting to one landowner from the enforcement of a restrictive covenant would be considerably disproportionate to the benefit received by the landowner seeking enforcement, a court may decline to afford the landowner seeking enforcement the equitable relief of an injunction to redress a breach of the restrictive covenant. 9 Richard R. Powell, Powell on Real Property § 60.10[3] (Sept. 2011).
Nevertheless, based on the specific facts in this case, we agree with the Association that the trial court erred in applying the relative-hardship test. In Lange, supra, a landowner purchased a residential lot subject to a restrictive covenant precluding the construction of any buildings without the unanimous consent of nearby neighbors. When one neighbor objected to the landowner’s plan to build a house on the lot, the landowner sought declaratory and injunctive relief against the prospective enforcement of the restrictive covenant. 567 So.2d at 1300. In Lange, the supreme court did not consider whether the relative-hardship test applies when a landowner breaches a restrictive covenant and a neighboring landowner seeks remedial enforcement of the restrictive covenant. This court expressly addressed that situation in Maxwell v. Boyd, 66 So.3d 257 (Ala.Civ.App.2010). In Maxwell, this court held that a landowner who actively breaches a restrictive covenant with actual knowledge or constructive notice of the content of the covenant cannot invoke the relative-hardship test. As this court explained in Maxwell, the relative-hardship test rests entirely on equitable principles. 66 So.3d at 261-62. This court further stated:
“[I]t follows that seeking the invocation of the doctrine will require the possession of clean hands....
“A pertinent specific application of the clean-hands doctrine is that a restrictive covenant should be enforced if the defendant had knowledge [or constructive notice] of it before constructing an improvement contrary to its provisions, even if the harm is disproportionate.”
66 So.3d at 261.
In this case, William Rice testified that he had been made aware of the covenants upon receipt of the April 23, 2008, letter from the Association welcoming the Rices to the neighborhood. The record further indicates that the Rices did not begin the modifications to the driveway until after they had received the restrictive covenants. Hence, the only conclusion to be drawn is that the Rices altered their driveway with constructive notice that the combination of the materials they were applying did not comply with § 6.20 of the restrictive covenants.
The dissent attempts to distinguish this case from Maxwell by asserting (1) that the driveway in the present case was not as clear a violation of the restrictive covenant at issue as was the violation at issue in Maxwell, particularly in light of the trial court’s findings that the restrictive covenant contained a latent ambiguity and that the driveway conformed to the covenant, *738 and (2) that, unlike in Maxwell, the Rices had not been warned during the time the modifications were being made to the driveway that the driveway would not comply with the covenant. 90 So.3d at 742 (Bryan, J., dissenting). We note first, as does the dissent, that the trial court’s finding — that the restrictive covenant contained a latent ambiguity — was reversed by this court in Grove Hill. Thus, we decline to rely on that finding to now conclude that the modification of the driveway was not a clear violation of the restrictive covenant.
Moreover, there is no evidence in the record, testimonial or otherwise, suggesting that the Rices were in doubt as to whether their driveway would conform to the restrictive covenant at issue. This is not a case in which a homeowner proceeded to construct a substantial improvement on his or her property based on an innocent, mistaken interpretation of a restrictive covenant or based on some confusion as to the application of the covenant; rather, William testified unequivocally as follows:
“[Counsel for the Association]: Okay. Did you consider any of the rules in the covenants before you made the decision to improve your driveway?
“[William]: No, sir.”
Additionally, William testified that he had not seen any other gravel driveways in the neighborhood. The Rices admitted that, despite knowing that their driveway would be modified with materials different from every other driveway in the subdivision, they did not seek preapproval of their modification plan from the Architectural Review Committee (“the ARC”), in clear violation of § 5.05 of the restrictive covenants. The Rices simply failed to take the restrictive covenants into consideration before modifying the driveway.
With regard to the dissent’s assertion that the Rices had not been warned that their modification of the driveway was in violation of the restrictive covenants, 90 So.3d at 742 (Bryan, J., dissenting), we note that the law does not place the onus on the enforcer of restrictive covenants to warn violators thereof that they may not be in compliance, particularly in circumstances such as those in the present case, where the restrictive covenants require homeowners to gain preapproval of any improvements. Had the Rices obtained such preapproval, any resulting damages could have been avoided. We note also that there is no evidence in the record suggesting that the members of the Association were aware of the Rices’ violation of the restrictive covenants during the modification of the driveway and failed to warn the Rices of that violation.[2]
The dissent also asserts that the Rices’ conduct does not rise to the level of “morally reprehensible, willful misconduct.” 90 So.3d at 742 (Bryan, J., dissenting). We agree that the evidence indicates that the Rices intended in good faith to improve the aesthetics of their property by modifying the driveway and that they did not violate the restrictive covenants out of spite, ill will, or any other improper motive. However, this court held in Maxwell, supra, that the clean-hands doctrine applies when a landowner violates a restrictive covenant of which he or she has constructive notice. 66 So.3d at 262. That holding coincides with the maxim that “[w]here one takes land with notice of restrictions, equity and good conscience will not permit that per *739 son to act in violation thereof .... ” Gladstone v. Gregory, 95 Nev. 474, 480, 596 P.2d 491, 495 (1979) (holding that homeowners- with only constructive notice of a one-story building limitation before beginning construction adding second story onto home were not entitled to balancing of the equities under relative-hardship test). The fact remains that the Rices, with constructive notice of the restrictive covenants, did not consult the covenants or otherwise seek permission from the Association before constructing a driveway different from all the other driveways in the neighborhood. By proceeding despite their notice of the restrictive covenants, the Rices are without clean hands.
Because the Rices had constructive notice of the restrictive covenants before they actively breached § 6.20, they cannot invoke the relative-hardship test to avoid the consequences of their breach.[3] When the relative-hardship test does not apply, and the offending landowner has not presented any other valid defense to enforcement of the restrictive covenant, a violation of the restrictive covenant provides a sufficient basis for the granting of injunctive relief. 9 R. Powell, supra, § 60.10[3]. The law presumes irreparable harm from the breach of a restrictive covenant regardless of whether the breach actually enhances the value of the subject property. Willow Lake Residential Ass’n v. Juliano, 80 So.3d at 239; see also 9 R. Powell, supra, § 60.10[3] (“The fact that the burdened property will increase in value if the restriction is not enforced is not sufficient.”). The law cannot adequately address that harm, so an injunction must issue to remedy the breach even if that injunction causes the offending landowner great expense. See Maxwell, 66 So.3d at 262.
*740 As thoroughly explained by this court in Willow Lake Residential Ass’n v. Juliano, a case in which the relative-hardship test was not at issue:
“As to the former finding — that the construction of the steps actually enhanced the value of the subdivision— the record contains no competent evidence as to the effect of the construction of the steps on the value of the subdivision property. The Association maintained throughout the proceedings that any violation of a restrictive covenant, if allowed over its objection, necessarily dilutes the power of the restrictive covenants and thereby lessens the value of the subdivision property. We agree. In creating the restrictive covenants, the partnership expressly declared that the purpose of the covenants was ‘to protect the value and desirability of the Property.’ Any unauthorized violation of the restrictive covenants would run counter to that purpose and would be classified as ‘irreparable harm’ as a matter of law. See Tubbs v. Brandon, 374 So.2d 1358, 1361 (Ala.1979). Thus, the steps, if allowed to stand in violation of the restrictive covenants, decrease the value of the subdivision property.
“Moreover, we conclude that it is immaterial whether the construction of the steps actually increased the value of the subdivision property. ‘When a restrictive covenant is broken, [our supreme court] has stated that an injunction should be issued because the mere breach of the covenant is a sufficient basis for interference by injunction. The right to enjoin such a breach will not depend upon whether the covenan-tee will be damaged by the breach.’ Tubbs v. Brandon, 374 So.2d at 1361 (citing Reetz v. Ellis, 279 Ala. 453, 186 So.2d 915 (1966)). As explained by our supreme court,
“ ‘the reasons for this rule are stated to be that the owner of land, when selling to another, may insist on such covenants as he pleases touching its use and has the right to define the injury for himself; and that, when the covenant is broken, an injunction should issue because, from the very nature of the case, the remedy at law is inadequate.’
“Reetz, 279 Ala. at 460, 186 So.2d at 921. The trial court’s reasoning would imper-missibly allow individual homeowners to violate restrictive covenants if those homeowners were subjectively convinced that the violation would improve the value of the subdivision property. That reasoning directly contradicts the law that ‘a party to a covenant is entitled to seek its enforcement even if the ... breach does not negatively impact the value of his property.’ Viking Props., Inc. v. Holm, 155 Wash.2d 112, 121 n. 4, 118 P.3d 322, 327 n. 4 (2005). Therefore, the trial court erred in determining that the steps enhanced the value of the subdivision property and in denying the Association relief on that basis.”
80 So.3d at 239.
In the present case, the Association, having proven that the Rices breached an unambiguous restrictive covenant of which they had notice, was entitled to the enforcement of that restrictive covenant.[4] Be *741 cause the trial court declined to grant the permanent injunction requested by the Association based on its application of the relative-hardship test, we conclude that the trial court erred. We therefore reverse the trial court’s judgment and remand the cause for the entry of a judgment consistent with this opinion and for such further proceedings as are necessary to conclude this matter.
APPLICATION GRANTED; OPINION OF JULY 29, 2011, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
PITTMAN and THOMAS, JJ., concur.
BRYAN, J., dissents, with writing, which THOMPSON, P.J., joins.

. As William testified, the landscaping company sprayed hot liquid asphalt over the concrete base of the driveway and then shoveled loose granite over the asphalt layer. That granite was described in the record as "pea gravel.” Apparently, it was intended that the pea gravel would fasten to the asphalt layer as it dried. However, it is undisputed that some of the pea gravel was loose from the asphalt layer by the time of trial.

. John Price, who was on the board of directors of the Association when the driveway was modified, testified that he had observed the driveway for several months when passing by the Rices’ property. Price testified that he was under the assumption that the driveway was not yet completed. That testimony does not establish that Price knew that the Rices intended to leave the driveway in a permanent condition that would violate § 6.20.

. For that reason, we find no need to address the dissent’s argument that the equities of the case favor the Rices. 90 So.3d at 741. We do note, however, that, in Lange v. Scofield, our supreme court emphasized that the evidence showed that the proposed house that would violate the restrictive covenant would not appreciably increase the density of the neighborhood and would be "consistent in size, design, and overall quality” with the other houses in the neighborhood. 567 So.2d at 1301. Our research has revealed no Alabama case in which an appellate court has applied the relative-hardship test to allow a homeowner to violate an unambiguous restrictive covenant in order to maintain an improvement that is inconsistent with the design of all other similar improvements in the same subdivision, even if that inconsistent design may be considered equally aesthetically pleasing.
In Lange, the supreme court also emphasized that the lot at issue in that case would be "almost without value" if the restrictive covenant was enforced. 567 So.2d at 1302. That is not the case here, where enforcement of § 6.20 would not prevent the Rices from using their property as a residence in the same manner as their neighbors.
Finally, in Lange, the adjoining lot owner who sought enforcement of the restrictive covenant could not prove that she would receive any benefit from the enforcement. 567 So.2d at 1302. In this case, the restrictive covenants are intended to, among other things, "establish and preserve a harmonious design for the development .... ” Grove Hill Subdivision Declaration of Covenants, Conditions, and Restrictions, § 5.05. In Turner v. Sellers, 878 So.2d 300 (Ala.Civ.App.2003), this court noted that subdivision restrictive covenants that are consistently applied and followed substantially benefit all the landowners within the subdivision by defining and controlling the acceptable development of the property therein. 878 So.2d at 306. Just as in Turner, the Association in this case would lose that benefit if the Rices’ driveway was allowed to stand. 878 So.2d at 306 ("To date, the trial court found, the Committee has not allowed any other variances from the restrictive covenants. Should an exception be permitted in this case, there would be no reason why neighbors who have similar drop-offs in the back of their properties should not be given similar relief from the restrictive covenant, thereby defeating the purpose of having the restrictive covenants.”).

. On application for rehearing, the Rices complain that this court's opinion effectively negates the relative-hardship test, leaving it no field of operation. We disagree. As was held in Lange v. Scofield, a landowner who purchases property with actual knowledge of a restrictive covenant may nevertheless invoke equity to avoid that covenant if the covenant no longer serves any substantial beneficial purpose and its prospective enforcement would cause undue harm to the covenantee. 567 So.2d at 1302. See also Johnson v. H.J. Realty, 698 So.2d 781, 783 (Ala.Civ.App.1997) *741 (voiding restrictive covenant requiring land to be used for automobile dealership where trial court found that restriction would not benefit adjoining landowners and would render property basically unmarketable).