This is an appeal from a judgment entered in favor of the plaintiff, Patricia Scofield, and against the defendant, Kathryn Lange, in an action for declaratory and injunctive relief against the enforcement of restrictive covenants encumbering a residential lot that Scofield owns in Mountain Brook.[1] The trial court declared the covenants unenforceable, thereby allowing Scofield to build a house on her property.
The property owned by Scofield and that owned by Lange were originally owned by the Wofford Bond and Mortgage Company and Carrie Wofford ("Wofford"). In 1928 Wofford subdivided a large tract of land into 25 smaller lots. The two largest of those lots were estate-sized lots that will be referred to as Estate A and Estate B. Wofford sold Estate B to Virginia Lange, Kathryn Lange's mother. That lot was approximately two acres in size. The deed conveying Estate B to Virginia Lange contained the following restrictive covenant:
 "That not more than one residence with necessary outbuildings shall ever stand on said property; it is also intended hereby to prohibit the erection on said property of any duplex, double or apartment home."
Wofford retained Estate A, which was approximately 4 1/4 acres in size. That property was encumbered by the same covenant that applied to Estate B. Both covenants ran with the land. Prior to 1960, Estate A and Estate B each contained a single house.
In 1960 Wofford asked the Planning Commission of Mountain Brook ("the commission") for permission to resurvey and subdivide Estate A into two lots, Estate A-1 (3 1/2 acres) and Estate A-2 (3/4 acre). Estate A-1 fronted on the same street that the house on Estate B faced, whereas Estate A-2 fronted on another street, which also formed the rear boundary of Estate B. The Wofford residence stood on the proposed Estate A-1. The commission approved the subdivision on the condition that Wofford adopt the restrictive covenant as to both lots and agree that no building would be erected on Estate A-2 without the written consent of the owners of all of the property adjoining or across the street from Estate A-2. Wofford agreed to that condition and it was adopted as an additional covenant that ran with the land.
In 1969 Scofield acquired Estate A-1. Her deed to that property contained the *Page 1301 
previously described restrictive covenants. In 1978 she acquired Estate A-2, which was also encumbered by the covenants. In 1979, following the death of her mother, Lange acquired Estate B. However, Lange lives in Great Britain and the residence on Estate B has been unoccupied for approximately 10 years.
In 1988 Scofield sold Estate A-1 for $1,500,000 and retained Estate A-2. She wants to reinvest the proceeds from the sale of Estate A-1 into a new residence for her family on Estate A-2. In an attempt to comply with the covenants, Scofield obtained written consent to the construction from five of the six property owners whose property surrounds Estate A-2; Lange, however, has consistently refused to give her consent. Her refusal led Scofield to file this action to have the covenants removed.
After hearing testimony from a number of witnesses and reviewing documentary evidence, the trial judge found that enforcing the covenants would not benefit Lange, but would work a substantial hardship on Scofield. The judge also found that allowing Scofield to build her proposed residence would not depreciate the value of Lange's property or interfere with her enjoyment of it, and that the proposed residence would be consistent in size, style, and value with the rest of the houses in the neighborhood. After weighing the relative benefits to the parties against the burdens, the trial judge held that Lange had failed to present any reasonable or equitable ground for objecting to the construction proposed by Scofield and held, therefore, that the covenants were unenforceable. Lange appeals.
At the outset, we wish to point out that restrictive covenants are not favored in the law and will therefore be strictly construed by this Court. All doubts must be resolved against the restriction and in favor of free and unrestricted use of the property. Frander Frander, Inc. v. Griffen,457 So.2d 375, 377 (Ala. 1984). In addition, a presumption of correctness attends determinations made by trial courts sitting without a jury and hearing evidence presented ore tenus. This Court will not disturb the decisions of such courts unless their findings are plainly and palpably wrong or manifestly unjust. Silverman v. Charmac, Inc., 414 So.2d 892 (Ala. 1982);Laney v. Early, 292 Ala. 227, 292 So.2d 103 (1974).
Lange contends that the trial court used the wrong test when it invalidated the covenants. She argues that a covenant can be invalidated only when it is shown that the character of the neighborhood surrounding the encumbered property has changed so radically that the covenant's original purpose can no longer be accomplished. That test is known as the "change of neighborhood" or "change of conditions" test. 5 R. Powell,The Law of Real Property § 679(2) (1987 rev.). She directs this Court's attention to a number of cases that she argues support her contention that the "change of neighborhood" test is the only one applied in this jurisdiction. Laney v. Early, supra;Centers, Inc. v. Gilliland, 285 Ala. 593, 234 So.2d 883 (1970);Allen v. Axford, 285 Ala. 251, 231 So.2d 122 (1969).
We agree with the trial court that the cases relied on by Lange, and the test contained therein, have no applicability to this case. In each of those cases the party trying to have the covenant removed wanted to use the property for a purpose that was drastically different from that allowed by the covenant.Laney, 292 Ala. at 229, 292 So.2d at 104-05; Gilliland,285 Ala. at 594-95, 234 So.2d at 884-85; Allen, 285 Ala. at 254-55,231 So.2d at 124-25. The use proposed by Scofield for Estate A-2 is entirely consistent with the use of Estate B and Estate A-1, the only other pieces of property subject to the covenants, and the house she plans to build is consistent in size, design, and overall quality with the houses on those parcels. In fact, the evidence presented showed that the house planned by Scofield will be superior in appearance to the house on Lange's property, which has been allowed to fall into disrepair. Also, the covenants in the instant case applied only to Estate A and Estate B and were not part of a neighborhood development scheme, whereas the covenants in the cases relied on by Lange applied to *Page 1302 
entire neighborhoods and appear to have been intended to control the development of those neighborhoods. Id. Because the covenants in this case were restricted to Estate B and property that was once part of Estate A, the trial court's finding that the "change of neighborhood" test did not apply was not error.
The test relied on by the trial court was the "relative hardship" test. Under that test a covenant will not be enforced if to do so would harm one landowner without substantially benefiting another landowner. Powell, supra, § 679(3). This Court has at least implicitly approved the use of that test. See Laney, 292 Ala. at 233, 292 So.2d at 109; Allen, 285 Ala. at 259, 231 So.2d at 129. The factors to be considered in applying this test are well stated in 20 Am.Jur.2d Covenants,Conditions, Restrictions § 313, at 876-77 (1965):
 "Broadly speaking, the enforcement of building restrictions is governed by equitable principles, and will not be decreed if, under the facts of the particular case, it would be inequitable and unjust. . . . The complainant's right to insist on the restrictive covenant must be clear and satisfactory. . . .
 "The equitable enforcement of a restriction can be invoked only for the purpose of protecting the benefit which it was the object of the covenant to afford. If the restrictive covenant has ceased to have any beneficial or substantial value to the . . . property, it can form no ground for equitable relief. . . . [I]f the defendant will be subject to great hardship or the consequences would be inequitable, relief will be denied."
The triad court rejected the only argument put forth by Lange for enforcing the covenant. She argued that Scofield's proposed house would increase the density of the neighborhood, thereby reducing the value of her property. However, the evidence supported the trial court's finding that any increase in density occasioned by the construction of Scofield's house would be minimal. In addition, there was no conclusive evidence presented that showed that Scofield's house would adversely affect the neighborhood's property values. Instead, the majority of the testimony indicated that Scofield's house would increase the overall value of property in the neighborhood, including Lange's.
There was also testimony that indicated that Scofield's house would not be visible from Lange's house, and would therefore not interfere with Lange's enjoyment of her property. That testimony, when combined with the evidence that Lange's house has been essentially abandoned for 10 years and has been allowed to fall into disrepair, supports the trial court's determination that the erection of Scofield's house will not have any detrimental effect on Lange. Finally, there was ample evidence that Estate A-2 would be almost without value if the covenants are enforced.
After reviewing the record, this Court finds that there was ample evidence supporting the trial court's finding that Lange did not present a reasonable or equitable ground for objecting to the construction proposed by Scofield, and its determination that any negligible benefit received by Lange from enforcing the covenants would be far outweighed by the hardship that such enforcement would impose on Scofield. Because that court's findings were not plainly and palpably wrong or manifestly unjust, its judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.
[1] AmSouth Mortgage Company ("AmSouth") was also named as a defendant. AmSouth did not participate in the trial of this case and has not joined Lange's appeal.