PITTMAN, Judge.
 

 This appeal, transferred to this court pursuant to Ala.Code 1975, § 12-2-7(6), concerns the enforceability of a residential restrictive covenant.
 

 In February 2005, Ray E. Maxwell and Dana Maxwell, the owners of a residential lot in the Etowah County subdivision known as “The Highlands,” filed a civil action in the Etowah Circuit Court naming as defendants the occupants of an adjacent lot, Jerry S. (Steve) Boyd and Nicole Boyd.
 
 [1]
 
 The Maxwells sought injunctive relief prohibiting the Boyds from undertaking construction of, or compelling removal of, a garage that, the Maxwells contended, would violate restrictive covenants filed of record with the Etowah County probate office; specifically, the complaint alleged that the proposed structure would violate a covenant barring buildings “nearer than 15 feet to an interior lot line.” The Boyds filed an answer in which they admitted the existence of covenants restricting their use of their lot, but they averred that the restrictions were “not enforceable.” After an ore tenus proceeding, the trial court entered a judgment on October 7, 2009, granting the relief requested by the Maxwells, but it vacated that judgment on October 8, 2009, stating that that judgment had been entered in error. On October 23, 2009, the trial court entered a judgment denying the relief requested by the Maxwells, concluding that enforcement of the restrictive covenants would be “unjust and inequitable” based upon “the inconsistencies between the practices in the subdivision and the requirements of the restrictions!,] ... building practices within the neighborhood directly across the street from the Boyd and Maxwell property, and the lack of evidence of significant economic impact upon the Maxwell property.” The Maxwells appeal following the denial of their postjudgment motion to alter, amend, or vacate the judgment.
 
 [2]
 

 When ore tenus evidence is presented to the trial court, a presumption of correctness exists as to the trial court’s findings on issues of fact, and a judgment based on such findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.
 
 E.g., Traweek v. Lincoln,
 
 984 So.2d 439, 442 (Ala.Civ.App.2007). That said, a presumption of correctness is not indulged when the trial court improperly applies the law to the facts, nor when the pertinent question involves the application of law to
 
 *259
 
 essentially undisputed facts.
 
 Id.
 
 at 442-43.
 

 The record reveals that in December 1994 Nancy C. Becker, who owned the property upon which “The Highlands” was to be developed, filed of record in the Etowah County probate office a four-page document indicating that she “intend[ed] to sell the property[,] restricting it in accordance with a common plan designed to preserve the value and qualities of the land for the benefit of its future owners.” The covenants contained in that document included, among other things, a restriction of the use of the land to solely residential purposes rather than for business purposes, a mandate that all homes have an attached garage providing for “side, rear entry, or 45 degree entry,” and a requirement that “[n]o building shall be located nearer than 15 feet to an interior lot line.” The document also provided for the appointment of a committee consisting of at least three owners of lots in “The Highlands” after nine homes had been constructed and sold there; although the committee was “to oversee compliance with the provisions of [the] restrictions,” the record reflects that no such committee has ever been formed.
 

 The Maxwells purchased their lot in “The Highlands” in 1995 from Becker, and their deed expressly referred to the recorded covenant document. The Boyds received a deed to a lot in “The Highlands” adjacent to the Maxwells’ property in April 2007; although the Boyds did not receive their lot directly from Becker, the deed that they did receive expressly noted that the conveyance was “[s]ubject to easements,
 
 restrictive covenants,
 
 and ad valo-rem taxes of record” (emphasis added). Although one of the co-grantors named in the Boyds’ deed testified at trial that a copy of the recorded covenant document had been provided to the Boyds at the closing of their conveyance transaction and that her husband (the other co-grantor) had informed the Boyds that the document contained subdivision restrictions, Steve Boyd testified that he did not believe that he had been provided a copy of that document at closing, and both he and Nicole Boyd testified that they had first become aware of the document when it had been provided to them by their building contractor.
 

 At trial, Dana Maxwell testified that on November 11, 2008, she had noticed that two pine trees that had been located along the common border of the parties’ properties had been cut down and that “batter boards” and orange spray paint had been deployed on the Boyds’ property; at that time, Dana Maxwell had engaged the contractor in a conversation and had informed him that the construction would violate the subdivision regulations in the covenant document (a copy of which she also provided to the contractor). On that date, Dana Maxwell testified, no cement had been poured at the construction site. Nicole Boyd testified that the contractor had affixed the covenant document to the back door of the Boyds’ residence and had informed the Boyds of the existence of complaints by neighbors.
 

 According to Dana Maxwell, within one or two weeks of her having notified the contractor of the nonconformity of the project at its outset, Steve Boyd had come over to her home and had brought a copy of the covenant document with him. Steve Boyd stated during that visit that his copy of the covenant document bore no date and that he had unsuccessfully looked for the recorded copy of the covenant document; he also stated that he would engage an attorney and would “do the right thing.” Dana Maxwell testified that she had emphasized during their conversation that she had no objection to construction of a
 
 *260
 
 garage so long as it conformed to the prevailing covenants.
 

 When it became apparent that the Boyds would not desist from constructing their garage (which undisputedly faces the front of the Boyds’ lot and is located less than three feet from the common boundary of the Boyds’ lot and the Maxwells’ lot), the Maxwells engaged the services of an attorney. The Maxwells’ attorney sent the Boyds a letter on December 11, 2008, just after the concrete foundation of the garage had been laid, noting that the garage under construction violated the terms of “one or more” of the restrictions contained in the covenant document and informing them that “[vjiolation of [the] restrictions can have serious consequences.” A second letter was sent by the Maxwells’ attorney on January 21, 2009, notifying the contractor (who had had to enter the Max-wells’ lot in order to perform work on the garage because of the proximity of the garage to the common property line of the Boyds’ and the Maxwells’ lots) that the construction, in the Maxwells’ opinion, violated the restrictions in the covenant document and informing him that his and his agents’ use of the Maxwells’ property would not be tolerated. However, despite those letters, construction on the garage continued until suit was filed.
 

 At trial, Ray Maxwell testified that the existence of restrictive covenants at “The Highlands” had played a “major role” in his 1995 decision to purchase the Max-wells’ lot, and he noted that development in Etowah County had tended to be haphazard. He objected to the Boyds’ garage, describing it as an “eyesore” that adversely affected the marketability of his lot, and noted that although certain other covenants in force at “The Highlands” had not been strictly complied with, it was important to him that the Boyds’ garage was located along his property line. Ray Maxwell also testified that he knew of no other building or improvement in the subdivision that violated the 15-foot setback covenant, although he admitted during cross-examination that a home located in “The Highlands” and several homes located in the “Morris Acres” subdivision across the street from the Maxwells’ home appeared to have front-facing garages and that other lots in “The Highlands” appeared to have outbuildings and other nonconforming aspects of vai'ying degrees of permanency. Both Ray Maxwell and Dana Maxwell testified that the garage, which is a two-story structure accommodating the Boyds’ four motor vehicles on its first floor with an additional upstairs “bonus room” and a full roof, had caused a great deal of water to be deposited on their lot, including near where a garden had been maintained.
 

 Nicole Boyd admitted at trial that she had no survey or personal knowledge showing that any other permanent building or improvement in “The Highlands” violated the 15-foot side-setback covenant. Steve Boyd, however, testified that the lot adjacent to the Boyds’ lot on the opposite side from the Maxwells’ lot contained a utility outbuilding that was two feet from the common boundary line of those lots, according to his measurements, and he stated that, among other claimed covenant violations, there appeared to be a total of four outbuildings
 
 [3]
 
 and one home that were located closer than 15 feet to adjacent lots. Steve Boyd further opined that the garage would not adversely affect the value of the Maxwells’ property, and he testified that to tear down the garage would work an extreme hardship. On cross-examination, however, Steve Boyd admitted that “The Highlands” remained a “fairly neat, orga
 
 *261
 
 nized,” and “generally residential” subdivision, that the Boyds’ home formerly had a two-ear garage, that he had not measured any buildings in the subdivision for compliance with the 15-foot setback restriction other than the one adjacent to the Boyds’ lot on the other side, and that the Boyds’ contractor had priced his services upon a “time and materials” basis
 
 (ie.,
 
 an hourly labor rate plus the actual cost of materials used) and could have stopped working at any time the Boyds directed.
 

 The Maxwells correctly note that under Alabama law, when the language of a restrictive covenant is not “of doubtful meaning and ambiguous,” the language of that covenant “is entitled to be given the effect of its plain and manifest meaning.”
 
 Laney v. Early,
 
 292 Ala. 227, 231-32, 292 So.2d 103, 107 (1974). Thus, “[i]f ‘there is no inconsistency or ambiguity within a restrictive covenant, the clear and plain language of the covenant is enforceable by injunctive relief ” such as that sought by the Maxwells.
 
 Hipsh v. Graham Creek Estates Owners Ass’n, Inc.,
 
 927 So.2d 846, 848 (Ala.Civ.App.2005) (quoting
 
 Carpenter v. Davis,
 
 688 So.2d 256, 258 (Ala.1997)).
 
 [4]
 

 Laney
 
 further makes clear that that proposition of law is to take precedence over the disfavor that courts harbor toward restrictions of the use of land as a general matter. 292 Ala. at 231, 292 So.2d at 107.
 

 In this case, the Boyds do not contend that their structure complies with the setback covenant or that the setback covenant is of doubtful meaning or ambiguous. Rather, they seek refuge in the common-law doctrine of “undue hardship” most notably recognized in Alabama in
 
 Lange v. Scofield,
 
 567 So.2d 1299 (Ala.1990). The holding in
 
 Lange,
 
 in pertinent part, is based upon the doctrine that enforcement of covenants running with land “ ‘is governed by equitable principles, and will not be decreed if, under the facts of the particular case, it would be inequitable and unjust’ specifically, if “ ‘the restrictive covenant has ceased to have any beneficial or substantial value’ ” or “ ‘the defendant will be subject to great hardship or the consequences would be inequitable,’ ” a court of equity will not enforce the covenant. 567 So.2d at 1302 (quoting 20 Am.Jur.2d
 
 Covenants, Conditions, & Restrictions
 
 § 313 (1965)). That said, however, the “relative hardship” doctrine recognized in
 
 Lange
 
 is a creature of equity, and it follows that seeking the invocation of the doctrine will require the possession of clean hands.
 
 Cf. Hankins v. Crane,
 
 979 So.2d 801, 812 (Ala.Civ.App.2007) (indicating availability of unclean hands as defense to covenant-enforcement action, but concluding that no factual basis for the defense existed in that case). Equity is to “ ‘prevent a party from asserting his, her, or its rights under the law when that party’s own wrongful conduct renders the assertion of such legal rights “contrary to equity and good conscience.” ’ ”
 
 Id.
 
 (quoting earlier Alabama cases).
 

 A pertinent specific application of the clean-hands doctrine is that a restrictive covenant should be enforced if the defendant had knowledge of it before constructing an improvement contrary to its provisions, even if the harm is disproportionate.
 
 Green v. Lawrence, 877
 
 A.2d 1079, 1082 (Me.2005) (citing 9
 
 Powell on Real Property
 
 § 60.10(3));
 
 accord Turner v. Sellers,
 
 878 So.2d 300, 306 (Ala.Civ.App.2003) (affirming denial of relief from restrictive covenant when the burdened parties “knew that there were restrictions on
 
 *262
 
 the free use of their lot when they purchased it”). The knowledge sufficient to warrant denial of the relative-hardship defense need not be actual, but may be constructive.
 
 Miller v. Associated Gulf Land Corp.,
 
 941 So.2d 982, 989 (Ala.Civ.App.2005) (noting that trial court’s judgment denying relief from covenant was supported by evidence that the owners of the burdened lot had “purchased the subject property knowing of the nature of the deed restriction and therefore at least constructively knowing” of nearby land conditions and property owners’ rights).
 

 In this case, the Maxwells adduced undisputed evidence showing that the deed conveying the Boyds’ lot to them in 2007 bore a reference to the limiting effect of “restrictive covenants ... of record” upon the extent of their ownership interest as to that lot. Although the Boyds’ attorney apparently experienced difficulty locating the covenant document in the Etowah County probate records, there is no dispute that the document was of record in 2007, and the proper recording of an instrument in the probate court that relates to an interest in real property, such as the covenant document, constitutes constructive notice “to all the world” of the contents of the instrument.
 
 Haines v. Tonning,
 
 579 So.2d 1308, 1310 (Ala.1991) (citing Ala.Code 1975, § 35-4-90). Further, the Boyds’ constructive notice was bolstered by their actual notice of the existence of the covenant document provided to them by their contractor at the outset of construction after he had been provided a copy by Dana Maxwell and the letters sent by counsel for the Maxwells to the Boyds and their contractor. Although the Boyds had constructive and actual notice of the covenant barring their proposed structure, they elected to proceed with construction to the point of expending approximately $100,000 in building a four-car garage that clearly and undisputedly violates the covenant.
 

 In addition, as was the case in
 
 Turner, swpra,
 
 the covenant at issue applies throughout the pertinent subdivision and controls the development of each lot therein; thus, “the equity of permitting relief from the restrictive covenant in this case must be evaluated in broader terms than just its effect on the [Maxwells].” 878 So.2d at 306. Although there is disputed evidence that at least one lot in “The Highlands” contains a permanent structure that does not comply with the 15-foot setback covenant, the garage in this case, which extends to a point approximately 3 feet from the Maxwells’ lot, undisputedly causes special damage to the Maxwells in the form of increased water drainage onto their lot, a fact that warrants their special concern for
 
 this
 
 covenant in this particular case. The trial court’s judgment, in effect, negates the future enforceability of the setback requirement throughout the subdivision regardless of any similar negative consequences that might flow in individual cases from such encroachments. We thus cannot conclude that substantial evidence supports the trial court’s judgment to the extent that that judgment was based upon the “relative hardship” doctrine as recognized under Alabama law.
 

 The Boyds also appear to contend that the trial court’s judgment is supported by that portion of
 
 Lange
 
 that recognizes “changes of conditions,” or “changes in the neighborhood,” as a basis for preventing prospective enforcement of a restrictive covenant. Although the Boyds make that contention in the context of their overarching “relative hardship” position, this court has recognized that “the change-in-the-neighborhood test and the relative-hardship test are independent” bases for denying equitable enforcement of a covenant.
 
 AmSouth Bank, N.A. v. British
 
 W.
 
 Florida, L.L.C.,
 
 988 So.2d 545, 554 (Ala.Civ.App.2007). However, under
 
 La-
 
 
 *263
 

 ney,
 
 a claimed “ ‘change in character of the neighborhood sufficient to defeat a restrictive covenant must have been so great as to clearly neutralize the benefits of the restriction to the point of defeating the object and purpose of the covenant’ further, “ ‘changes
 
 outside of the restricted area
 
 should not be allowed to defeat the purposes of the restriction.’ ” 292 Ala. at 233, 292 So.2d at 108 (emphasis added).
 
 [5]
 

 In this case, the homes across the street from the Maxwells’ and the Boyds’ lots are not subject to the restrictions contained in the covenant document, and, thus, under
 
 Laney,
 
 they are not material to the change-in-conditions inquiry. Further, the disputed evidence of isolated encroachments in “The Highlands” contravening the covenant against structures less than 15 feet from side-lot lines does not amount to substantial evidence indicating that such a fundamental change in the character of that subdivision — one that would neutralize the benefits of the side-lot restriction— had taken place since the recording of the covenant document in December 1994, less than 15 years before the trial court’s judgment was entered.
 

 Based upon the foregoing facts and authorities, we conclude that the trial court’s judgment amounts to an improper application of the law to the undisputed facts and that that judgment is clearly erroneous. We therefore reverse the judgment, and we remand the cause for the entry of a judgment in conformity with this opinion.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . Although the second defendant listed in the complaint was identified in the complaint as “Stephanie Nicole Dickson,” we have identified her using the name that she gave at trial.
 

 [2]
 

 . Although our reversal of the judgment obviates any need to consider the prejudicial ef-feet of the error, we note that the Maxwells requested a hearing on their postjudgment motion, but their motion was erroneously denied by the trial court without a hearing.
 
 See
 
 Rule 59(g), Ala. R. Civ. P.
 

 [3]
 

 . The testimony of Steve Boyd and Ray Maxwell was in conflict regarding whether those outbuildings were structures of a permanent nature.
 

 [4]
 

 . We note that the Boyds cite no caselaw, and we are aware of none, conditioning the applicability of that essential rule of law to situations in which a "common plan” is claimed not to exist or in which a homeowners’ association has not been formed to serve as a separate and independent covenant-enforcement agent for local landowners.
 

 [5]
 

 . To the extent that
 
 Laney
 
 may conflict with
 
 AmSouth Bank
 
 or any other case decided by this court as to the pertinent geographic scope of changed conditions to be considered, we are, of course, bound by
 
 Laney. See
 
 Ala. Code 1975, § 12-3-16.