THOMAS, Judge.
Shahin Shawn Esfahani appeals from a judgment of the Baldwin Circuit Court ("the trial court") in favor of Steelwood Property Owners' Association, Inc. ("the Association"), regarding a decision of the Association's Architectural Review Board ("the ARB") to deny approval of certain palm trees that Esfahani planted on his property. We affirm the judgment in part and reverse it in part.
Background
Steelwood is a residential subdivision in Baldwin County. In 2012, Esfahani acquired a fee-simple interest in real property located within Steelwood via a warranty deed that incorporated by reference, among other things, a number of restrictive covenants and the Association's bylaws. The restrictions set out in Steelwood's "declaration of rights, covenants, restrictions, affirmative obligations and conditions" ("Steelwood's declaration") that are pertinent to this appeal provide:
"Section 7.01 RESPONSIBILITIES OF OWNERS .... No Owner shall (a) decorate, change or otherwise alter the appearance of any portion of the exterior of a dwelling or the landscaping, grounds or other improvements within a Lot unless such decoration, change or alteration is first approved, in writing, by the Developer or the [ARB] ....
"....
"Section 13.04 PURPOSE. In order to preserve and enhance the natural setting, beauty and utility of the Development, to establish and preserve a harmonious and aesthetically pleasing design for the Development, and to protect and promote the value of the Development and its environment, the Lots, and all improvements located therein or thereon shall be subject to the restrictions set forth in this Declaration. Every grantee of any interest in the Development, by acceptance of a deed or other conveyance of such interest, agrees to be bound by the provisions of this Declaration.
"....
"Section 13.07 ARCHITECTURAL APPROVAL. To preserve the architectural and aesthetic appearance of the Development, no construction of improvements of any nature ... shall be commenced ... unless and until two (2) copies of the plans and specifications relation data shall have been submitted and approved in writing by the [ARB] .... In the event the [ARB] shall determine that such plans and specifications have not been approved ... the [ARB] shall be entitled to ... require the removal ... of any work in place which does not comply with approved plans and specifications.
"Section 13.08 LANDSCAPING APPROVAL. No landscaping, grading, excavation, or filling of any nature whatsoever shall be implemented and installed by any Owner, other than the Developer, unless and until the plans therefor have been submitted to and approved in writing by the [ARB]. The provision of *842 Section 13.07 hereof regarding ... right to enjoin and/or require removal ... shall also be applicable to any proposed landscaping ....
"....
"Section 15.03 ENFORCEMENT. This Declaration shall be enforceable by the Association, the Developer, the [ARB], or any Member of the Association by a proceeding at law or in equity against any person or persons violating or attempting to violate or circumvent any covenant or restriction, either to restrain violation or to recover damages, and to enforce any lien created by this Declaration; and failure by the Association or any Member or the Developer to enforce any covenant or restriction herein contained for any period of time shall in no event be deemed a waiver or estoppel of the right of any of the foregoing to enforce the same thereafter."
In 2013, Esfahani installed palm trees on his property, some in planters near his swimming pool and some planted in the ground. In October 2014, the Association filed a complaint in the trial court alleging that Esfahani had failed to obtain the ARB's approval before installing the palm trees, that the ARB had denied approval of some the palm trees after Esfahani submitted a landscaping plan for approval, and that Esfahani had subsequently refused to remove the palm trees that the ARB had not approved. The Association sought a declaratory judgment, requested preliminary and permanent injunctions to require removal of "all landscaping or architectural ornaments" that violated the restrictive covenants and to prevent additional landscaping without the ARB's approval, and asserted a count for "breach of covenants/constructive trust/association lien" against Esfahani. Esfahani answered the Association's complaint and asserted various affirmative defenses.
A trial at which ore tenus evidence was received was conducted on May 30, 2017. The Association called Richard Miller to testify. Miller had been a principal in the entity that developed Steelwood and, at the time of the trial, was a member of the Association's board of directors and served on the ARB. He also lived adjacent to Esfahani. Miller testified that Esfahani had purchased his Steelwood property after the previous owners' house burned; he said a "very small" portion of the existing landscaping was also burned during that fire.
Miller testified that he had seen the palm trees at issue when they were delivered to Esfahani's property and that he had informed Esfahani that the ARB was unlikely to approve their installation. Miller said that Esfahani had indicated that he would "he[e]l them in," which Miller "took ... to mean just to get them in the ground so they wouldn't be sitting out exposed but not planted to the degree that you would if you were doing it on a permanent basis." Miller said that Esfahani had not submitted a landscaping plan to the ARB before their conversation regarding the palm trees and that he had informed Esfahani that the ARB would need to review a plan.
Miller testified regarding a number of letters in which the ARB had informed Esfahani of, among other things, the need to obtain the ARB's approval of his landscaping plan, which, the letters indicate, Esfahani eventually submitted. The ARB approved aspects of Esfahani's landscaping plan but determined that Esfahani's palm trees, other than some that had been installed around his swimming pool, violated Steelwood's restrictive covenants. Miller explained during cross-examination that the ARB had approved the palm trees that were installed near Esfahani's pool "because they were, in fact, in planters and *843 not in the yard itself[,] and we wanted to work with [Esfahani] on that."
In one of the letters, the ARB also requested that Esfahani submit a "landscape buffer" plan that would depict landscaping designed to shield certain of Esfahani's proposed landscaping features from public view. The ARB eventually directed Esfahani to remove his palm trees, other than those that had been installed near his swimming pool, but Esfahani did not do so. Miller said that there were no other palm trees like Esfahani's in Steelwood.
Miller testified that Esfahani had also installed certain decorative items, such as sculptures and fountains, and that, although a landscaping buffer had eventually been installed, it was not of sufficient height to block the decorative items from view. He asked that the trial court order Esfahani to remove the decorative items until the landscaping buffer had grown sufficiently tall, which, he estimated, would be approximately 10 feet high, or to alternatively order Esfahani to install a landscaping buffer of sufficient height.
Miller was cross-examined extensively. Miller testified that Esfahani had "obviously" misunderstood what sort of landscaping plan he was required to submit to the ARB for approval. He also admitted that Steelwood's restrictive covenants did not specifically prohibit palm trees, or any particular species of tree for that matter. He further admitted that the restrictive covenants did not require that plants installed within Steelwood be "indigenous," although that descriptor had been used in at least one letter from the ARB to explain why Esfahani's palm trees were prohibited. Miller said that using that descriptor was "a poor choice of words in this correspondence."
Miller opined that Esfahani's palm trees did not "blend harmoniously with the natural landscape on the adjoining lots and so on." He admitted that there was no specific document that defined what plants would be harmonious. He was asked about other palm plants in Steelwood, which had apparently been approved by the ARB, and, in at least one instance, he indicated that those plants were harmonious because the ARB had decided they were.
During redirect examination, Miller said that the ARB's intent had been to differentiate between shrubs or bushes and trees. Regarding Esfahani's landscaping, Miller also admitted: "They've got a gorgeous -- everything they've done is magnificent." During redirect examination, he said that Esfahani's palm trees were "[b]eautiful."
At the close of the Association's case-in-chief, Esfahani orally moved for a judgment as a matter of law, which the trial court denied. Esfahani called Deborah Newberry as a witness. Newberry said that she had served on the Association's board of directors from the latter part of 2010 through the beginning of 2013 and had been president of the board for a substantial portion of that time. She testified that, during that time, she had attempted to appoint herself to the ARB but had been informed by Miller that she lacked authority to do so.
Regarding her Steelwood residence, Newberry said that the ARB had approved the landscaping plan for that property. When asked by Esfahani's attorney whether the plan had included "[a] palm of some kind," Newberry testified: "I checked yesterday[,] and we have five in our yard." During cross-examination, Newberry testified that the height of those plants ranged from approximately 4 feet to approximately 10 feet. She also said that she had modified the landscaping on her property without submitting a formal landscaping plan to the ARB, apparently without incident. She opined that Esfahani's palm *844 trees did not negatively impact any aspect of Steelwood.
Esfahani also testified. He indicated that he and his wife had met with Miller and his wife on at least two occasions to discuss his purchase of the property in Steelwood and his intentions regarding reconstruction since the preexisting house had been burned. Esfahani said the following regarding one of the meetings:
"I asked if there was any permits, anything that I need[ed] to do, any submissions of plans to them. And the response was, no, that as long as I build the same house, nothing needed to be added. And as for landscaping, they said as long as it's done in good taste, we would be agreeable and amicable. With that in mind, I pulled the permits from the city."
He related the following regarding the palm trees at issue:
"[W]e purchased 13 or 14 palm trees. Eight of them were delivered immediately[,] and we planted those.... Two weeks went by[,] and the second order came in for the front and around the house. At that point, ... Miller walked up to my property and said those palm trees need to be approved by the ARB, the homeowner association. The palm trees around my pool area had already been planted for two weeks[,] and there w[as] no discussion regarding them being temporarily in as I heard ... Miller testify earlier."
Esfahani said that the conversation had taken place in his front yard and that Miller had expressed concern over the palm trees not being "indigenous to th[e] area." Esfahani testified that, approximately two days after his encounter with Miller, he had received a letter from the ARB asking for a formal landscaping plan. Esfahani eventually hired a landscape architect who, he said, Miller's wife had "highly recommended" to assist with developing a landscaping plan.
Esfahani testified that he subsequently met with the ARB. He said that Miller's wife
"was a little distraught or upset about the fact that these trees don't belong in Alabama, they're more of a south Florida flavor, and that would disturb the look of the community. And not understanding the root of it, you know, we went back and forth, you know, as to whether they are indigenous or not. I had seen them all around here and Orange Beach[,] and so we had a simple disagreement as to, you know, whether they belong here or don't belong here."
Esfahani said that the ARB later informed him that the palm trees would not be approved because they were not harmonious after, he opined, the ARB learned that most of the plants in Steelwood were not, in fact, "indigenous."
Regarding the landscaping buffer, Esfahani stated:
"So we planted roughly about 30 camellias[,] and they were five gallon camellias. And they grow at a reasonable rate[,] but they don't grow fast. We also fenced it so it is harder to see through from the angle that you're at the golf course because that was the issue, that golfers may be offended."
When asked by his attorney why he had not removed the palm trees at issue after the ARB denied approval of their installation, Esfahani said:
"Well, the reason was given to me of indigenous and harmonious. It didn't fit the description of what was really happening[,] so it seemed like either Mrs. Miller or Mr. Miller just personally did not like that. And that, to me, was not in the best interest of the community. We mutually have a contract to obey[,] and I *845 think they have the responsibility to have the best interest of the homeowners, the people who have invested a lot of money. I have the responsibility to obey the rules as I've tried very hard although they told me I did not need to have any permits. Once they notified me, I immediately went to work[,] and I provided [the ARB] with everything they wanted and some more. Those trees have already been -- half of them were in the dirt, and any one of them that was pulled out died. I just could not find a substantial reason to remove them, and this is why I'm here, Judge, to make sure that if this is a narrow and really kind of an unreasonable way of asking something that does not have to be done, all be it [sic] the mercy of the Court. Otherwise, I felt that their approach was very unreasonable and very, very narrow. And no other member or neighbors that I've seen have ever objected. In fact, they have praised the amount of investment that I have made in that property and the look of it."
Esfahani said that removing the palm trees would cause him significant financial impact.
During cross-examination, Esfahani agreed that his property was burdened by the restrictive covenants referenced in his deed and that those restrictive covenants required Steelwood residents to submit a landscaping plan to the ARB for approval before altering the landscaping on property located within Steelwood. He also agreed that, if the ARB had denied approval of his palm trees before their installation, he would not have incurred the expenses related to their installation and that the restrictive covenants permitted the ARB to deny approval of landscaping based on purely aesthetic considerations.
He explained his failure to submit a landscaping plan to the ARB by referencing his conversations with Miller and his wife, stating: "What they exactly told me was[,] as long as I built the house and[,] in good taste[,] complete the landscaping, I get a pass." Esfahani also agreed that there were no other palm trees like his in Steelwood.
Finally, Esfahani called Bill Finch to testify as an expert witness. Finch testified that he had been familiar with Steelwood "for many decades." He said that Esfahani's property had 10 Sylvestris palm trees and 1 Canary Island Date palm tree. He described Canary Island Date palm trees as "one of the largest of all" and said that "Sylvestris are smaller, probably topping out at 30 to 35 feet here with a trunk that is less robust, not as wide." Finch noted that one of Esfahani's neighbors had planted a "shrub palm," specifically a European Fan Palm, as a part of the landscaping for that property. Finch also said that there was a cluster of palm trees somewhere in Steelwood made up of Cabbage Palms or Sabal Palmettos that could grow to be approximately 60 feet tall.
Much of Finch's testimony focused on the idea that most of the plant life in Steelwood, specifically estimating 80 percent, was not native to the region. The other major focus of his testimony was explaining that many varieties of palm trees are, in fact, native to the region; he said: "About half by volume and half by species were brought in from other places." He testified that Esfahani's palm trees had been "brought in." He also said that he was not aware of any other Sylvestris palm trees in Steelwood and that he had "[m]aybe" seen another Canary Island Date palm tree.
The trial court entered a judgment on June 28, 2017. The judgment provides, in relevant part:
"Count One (1) Declaratory Judgment:
*846 "[Esfahani] purchased Lots 14 and 15, Unit 2, Phase 2, by warranty deed on February 14, 2012. He took title to those lots subject to the Restrictive Covenants applicable to Steelwood subdivision.
"[Esfahani] has violated those Covenants as stated herein below:
"Section 7.01: [Esfahani] did not receive approval (or even submit a request) in writing from the [ARB] prior to altering the landscaping of his property.
"Section 13.04 and 13.08: By planting palm trees on his property, [Esfahani] upset the natural setting and beauty of the neighborhood. These planting[s] did not preserve a harmonious and aesthetically pleasing design for the Development. This determination was that of the [ARB] as set out by the Covenants.
"Restrictive covenants have (as they should) a significant and substantial impact on the use and value of property. Restrictions, of course, restrict the free use of one's land. These are voluntary contracts. [Esfahani] sought out his lots in Steelwood, and he took the property subject to the restrictions. It is irrelevant to any understanding he had concerning his land use, as the restrictions were contained in the deed. The Court is unconcerned with whether [Esfahani] read any transfer documents prior to signing them.
"These lots are subject to architectural review, and the owner must adhere to the restriction contained in the restrictive covenants and [any plans] must be approved in advance by the [ARB]. [The ARB] is charged with making sure the proposed landscaping adheres to the architectural guidelines and whether it will be harmonious with other surrounding landscaping ... as decided by the [ARB] alone. This includes purely aesthetic considerations, as [it] decide[s] them to be. This Court will not substitute its judgment as to whether the planting of palm trees upsets the harmony of the Steelwood subdivision. That, as previously stated, is a function of the [ARB] alone. This Court will, however, ensure that the [ARB] did not act arbitrar[ily] or capricious[ly].
"The testimony was clear that, although many palm shrubs are in landscaping throughout the subdivision, there are no other palm trees. The distinction and approval of palm shrubs and trees is, again, a function for the [ARB] to decide. [It] ha[s] obviously decided that all manner and nature of palm shrubs are to be allowed in the subdivision, but palm trees will not [be], under most circumstances. In Grove Hill Homeowners' Association, Inc. v. Rice, 43 So.[3]d 609 (Ala. Civ. App. 2010), the Alabama Court of Civil Appeals clarified the standard under which a court must consider the enforceability of a decision of an architectural review board of a residential subdivision. Applying that standard, the only judicial issues here are whether the exercise of the review board was procedurally fair and reasonable: whether it was made in good faith; and was reasonable and not arbitrary or capricious. The testimony was clear that [Esfahani] never submitted his landscaping for approval, and [he] was even told by the developer that palm trees would not be approved ... before he planted them. Furthermore, [Esfahani]'s own expert testified that, after spending two (2) days observing Steelwood, the palm trees on the Esfahani property were the only palm trees on property.
*847 "These decisions, since not arbitrary or capricious, will not be second guessed by this Court. As such, the palm trees that were not approved in advance by the [ARB] are in violation of the restrictive covenants. Additionally, the entire landscaping buffer plan was not approved in advance, and [Esfahani] is in violation of the covenants as to that allegation.
"Count two (2) Preliminary and Permanent injunction:
"The evidence presented during [the] trial clearly showed that [Esfahani] had actual and constructive notice of the Covenants requiring prior [ARB] approval of any landscaping plantings. [Esfahani] acknowledged at trial that his deed was subject to the covenants. Additionally, during the trial, testimony concluded that [Esfahani] was informed by ... Miller (after seeing the palm trees being delivered on site) that the review board would likely not approve the palm trees, and [Esfahani] stated he would just 'heel them in' for the time being. At no time thereafter did [Esfahani] present his plan to plant the trees permanently to the [ARB].
"In addition to planting the palm trees without permission, [Esfahani] moved forward with installing/building a number of sculptures and yard art, which were given conditional approval pending submission of a landscape buffer plan which would shield from view those elements from the golf course and neighboring properties. The buffer plan was never approved by the [ARB], and the fact that [Esfahani] moved forward with landscaping was done at his peril.
"The law presumes irreparable harm from the breach of a restrictive covenant regardless of whether the breach actually enhances the value of the subject property. The law cannot adequately address that harm, so an injunction must issue to remedy the breach even if that injunction causes the offending landowner great expense. See Willow Lake Residential Ass'n v. Juliano, 80 So.3d [226,] 239 (Ala. Civ. App. 2010). Since the [ARB]'s action was not done inconsistently or ambiguously, the clear and plain language of the covenants [is] enforceable by injunctive relief. See Grove Hill Homeowners' Ass'n. Inc. v. Rice, 43 So.3d 609 (Ala. Civ. App. 2010) (quoting Carpenter v. Davis, 688 So.2d 256, 258 (Ala. 1997) ); Hipsh v. Graham Creek Estate[s] Owners Ass'n, [927] So.2d 846, 848-49 (Ala. Civ. App. 2005).
"Therefore a permanent injunction is hereby granted against [Esfahani]. Specifically, the four (4) palm trees planted around the pool are not in violation of the restrictive covenants. All remaining palm trees on [Esfahani]'s property are in violation of the restrictive covenants. [Esfahani] shall bring his property into compliance with the restrictive covenants within forty-five (45) days ..., i.e, he shall remove the violative palm trees in that time frame.
"Furthermore, [Esfahani] is barred from removing, trimming, pruning, or disturbing in any manner the barrier landscape he has placed to shield the interior of his property from view. This bar shall remain until either the Court or the [ARB] grants permission to alter their state. [Esfahani] shall further submit a landscape buffer plan to the Association within forty-five (45) days from the date of this order, and he is bound by the recommendations and decisions of the [ARB].
*848 "Count Three (3) Breach of Covenants/Constructive Trust/Association Liens:
"The [Association] successfully proved that [Esfahani] breached the covenants, as discussed in Count two (2) above. According to the By-Laws of the [Association], the Association shall be entitled to recover attorney's fees in the amount of $26,913.44, plus the cost of court for prevailing on the merits."
(Emphasis in original.)
Esfahani filed a postjudgment motion on July 20, 2017, in which he challenged each aspect of the trial court's judgment and requested a stay of its enforcement pending a disposition of his postjudgment motion and any appeal following thereafter.[1] The Association responded to Esfahani's postjudgment motion. On August 8, 2017, the trial court entered an order denying Esfahani's postjudgment motion. On August 9, 2017, Esfahani filed a motion seeking the trial court's approval of a supersedeas bond in the amount of $50,000. The trial court granted the motion the next day. Esfahani filed a notice of appeal to the Alabama Supreme Court on September 19, 2017. The appeal was transferred to this court by our supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
Analysis
On appeal, Esfahani enumerates four primary issues and several subissues, essentially challenging each determination set out in the trial court's judgment. Esfahani's first set of arguments relate to the issue whether a permanent injunction was warranted, and he begins his analysis by citing our decision in Vestlake Communities Property Owners' Association, Inc. v. Moon, 86 So.3d 359 (Ala. Civ. App. 2011), which he asserts "presented a similar factual scenario to this case in that the property owners' association sought to require removal of an improvement placed by a property owner."
In Vestlake, we quoted from Maxwell v. Boyd, 66 So.3d 257, 258-59 (Ala. Civ. App. 2010), in noting the presumption of correctness that accompanies a trial court's findings based on disputed ore tenus evidence. 86 So.3d at 364-65. We also listed the elements that must be established to obtain a permanent injunction:
" ' "To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not disserve the public interest." ' "
86 So.3d at 364 (quoting Sycamore Mgmt. Grp., LLC v. Coosa Cable Co., 42 So.3d 90, 93 (Ala. 2010), quoting in turn TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1242 (Ala. 1999) ).
Regarding the success-on-the-merits element, Esfahani argues that the Association "failed to prove the breach of a restrictive covenant because there was no covenant prohibiting palm trees or otherwise *849 articulating an applicable objective standard for approved landscaping design." He also devotes a substantial portion of his appellate brief to arguing that the ARB's disapproval of his palm trees was arbitrary and capricious. As the Association points out, however, Esfahani ignores that, in addition to Section 13.04 of Steelwood's declaration, the ARB's interpretation of which the trial court admittedly gave deference,[2] the trial court also determined that Esfahani had breached the objective requirements of Sections 7.01 by failing to obtain the ARB's approval of the palm trees before installing them, which was undisputed and required no deference to the ARB. Esfahani's contention that he did not breach a restrictive covenant therefore lacks merit, and the success-on-the-merits element is satisfied here.
Esfahani also argues that the Association failed to prove that his "palm trees presented a substantial threat of irreparable injury to [the Association] if the injunction sought against Esfahani is not granted." On that point, the trial court cited in its judgment Willow Lake Residential Association, Inc. v. Juliano, 80 So.3d 226, 239 (Ala. Civ. App. 2010) (quoting Tubbs v. Brandon, 374 So.2d 1358, 1361 (Ala. 1979) ), in which we stated:
" 'When a restrictive covenant is broken, [our supreme court] has stated that an injunction should be issued because the mere breach of the covenant is a sufficient basis for interference by injunction. The right to enjoin such a breach will not depend upon whether the covenantee will be damaged by the breach.' "
Esfahani argues that he did not breach an objective restrictive covenant and that
"[t]he presumption of irreparable harm is only applicable in cases where a specific objective covenant is implicated. There is no decision by an Alabama court referencing such a presumption in a case where a subjective decision supported by a dubious or undefined standard created after the decision is challenged. It follows that[,] in the realm of ARB decisions that do not have a basis in a specific objective covenant, such a presumption is not justified. Therefore, no presumption of irreparable harm is applicable and [the Association] was not relieved of the obligation to prove a substantial threat of irreparable injury if the injunction is not granted."
The Association responds by noting that this court has previously explained when "[t]he presumption of irreparable harm" is inapplicable. Our decision in Grove Hill Homeowners' Association, Inc. v. Rice, 90 So.3d 731, 732 (Ala. Civ. App. 2011), involved a second appeal from litigation between a landowner and a homeowners' association regarding the landowner's decision to install a driveway that the homeowners' association asserted violated certain restrictive covenants. In its judgment, the trial court in that case determined that " 'aesthetic value is the only injury [the Association] ha[s] truly attempted to show, and the aesthetic value of the driveway is improved from the *850 original condition of the driveway.' " Id. at 735.
The homeowners' association appealed, and we noted:
"On appeal, the Association argues that the trial court erred in balancing the equities to determine whether it should grant the injunctive relief requested by the Association. The Association quotes several opinions in which Alabama appellate courts have stated that 'the mere breach of the covenant is a sufficient basis for interference by injunction.' Tubbs v. Brandon, 374 So.2d 1358, 1361 (Ala. 1979) (citing Reetz v. Ellis, 279 Ala. 453, 186 So.2d 915 (1966) ); see also Willow Lake Residential Ass'n v. Juliano, 80 So.3d 226 (Ala. Civ. App. 2010). Based on that statement, the Association concludes that an injunction must issue in every case in which a breach of a restrictive covenant is proven, regardless of any equitable considerations. We disagree with that general statement of the law.
"In Lange v. Scofield, 567 So.2d 1299 (Ala. 1990), our supreme court expressly adopted the relative-hardship test, an equitable doctrine that generally provides that a restrictive covenant 'will not be enforced if to do so would harm one landowner without substantially benefiting another landowner.' 567 So.2d at 1302 (citing 5 Richard R. Powell, The Law of Real Property § 679(3) (1987 rev. ed.) ). Under the relative-hardship test as expressed in Lange, it is possible that the breach of a restrictive covenant would not automatically require the issuance of an injunction....
" '....'
"... Based on Lange, if, upon a balancing of the equities, a court determines that the harm resulting to one landowner from the enforcement of a restrictive covenant would be considerably disproportionate to the benefit received by the landowner seeking enforcement, a court may decline to afford the landowner seeking enforcement the equitable relief of an injunction to redress a breach of the restrictive covenant. 9 Richard R. Powell, Powell on Real Property § 60.10[3] (Sept. 2011)."
Id. at 736-37.
We went on, however, to clarify when the holding of Lange v. Scofield, 567 So.2d 1299 (Ala. 1990), does not apply:
"In Maxwell[ v. Boyd, 66 So.3d 257 (Ala. Civ. App. 2010) ], this court held that a landowner who actively breaches a restrictive covenant with actual knowledge or constructive notice of the content of the covenant cannot invoke the relative-hardship test. As this court explained in Maxwell, the relative-hardship test rests entirely on equitable principles. 66 So.3d at 261-62. This court further stated:
" '[I]t follows that seeking the invocation of the doctrine will require the possession of clean hands....
" 'A pertinent specific application of the clean-hands doctrine is that a restrictive covenant should be enforced if the defendant had knowledge [or constructive notice] of it before constructing an improvement contrary to its provisions, even if the harm is disproportionate.'
" 66 So.3d at 261."
Id. at 737.
In this case, Esfahani agreed that his property was burdened by Steelwood's restrictive covenants. He also agreed that the restrictive covenants required the ARB's approval to make any landscaping alterations. Moreover, it was undisputed that, upon observing the delivery of the palm trees at issue, Miller had expressly informed Esfahani that he would need the *851 ARB's approval to install the palm trees. Similarly, in Grove Hill, we noted:
"The [homeowners] admitted that, despite knowing that their driveway would be modified with materials different from every other driveway in the subdivision, they did not seek preapproval of their modification plan from the Architectural Review Committee ... in clear violation of ... the restrictive covenants. The [homeowners] simply failed to take the restrictive covenants into consideration before modifying the driveway."
Id. at 738.
On this point, Esfahani argues that, "[a]lthough he had notice of the requirement in the covenants that a landscape plan should be submitted to the ARB for approval, the undisputed evidence is that Esfahani was told that he did not have to submit a landscaping plan," and he cites his testimony regarding his conversations with Miller shortly after purchasing his property, during which Miller had reportedly indicated that Esfahani would not need to obtain permission to alter the landscaping on his property. In light of that evidence, Esfahani says, "[t]he ARB negated [his] notice of the covenants." Esfahani cites no authority in support of this argument.
"[A]n appellate court has no duty to perform a litigant's legal research. Legal Systems, Inc. v. Hoover, 619 So.2d 930 (Ala. Civ. App. 1993) ; Lockett v. A.L. Sandlin Lumber Co., 588 So.2d 889 (Ala. Civ. App. 1991) ; and Moats v. Moats, 585 So.2d 1386 (Ala. Civ. App. 1991). Similarly, appellate courts do not, 'based on undelineated propositions, create legal arguments for the appellant.' McLemore v. Fleming, 604 So.2d 353, 353 (Ala. 1992). This court will address only those issues properly presented and for which supporting authority has been cited. Simonton v. Carroll, 512 So.2d 1384 (Ala. Civ. App. 1987)."
Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala. Civ. App. 1996). We also note, however, that Section 15.03 of Steelwood's declaration specifically provides, in relevant part: "[F]ailure by the Association or any Member or the Developer to enforce any covenant or restriction herein contained for any period of time shall in no event be deemed a waiver or estoppel of the right of any of the foregoing to enforce the same thereafter." We will not, therefore, reverse the trial court's judgment based on Esfahani's unsupported assertion that his conversations with Miller had "negated" his notice of the restrictive covenants.
In his reply brief, Esfahani alternatively asserts that the appropriate remedy for his failure to submit a landscaping plan to the ARB would have been an injunction requiring him to do so,[3] as opposed to an *852 injunction requiring him to remove the palm trees. Again, Esfahani cites no authority in support of his contention. See id.
We again note, however, that Section 15.03 of Steelwood's declaration specifically provides, in relevant part: "This Declaration shall be enforceable ... by a proceeding at law or in equity against any person or persons violating or attempting to violate or circumvent any covenant or restriction, either to restrain violation or to recover damages ...." (Emphasis added.) Section 13.08, by reference to Section 13.07, also specifically authorizes the ARB to require removal of landscaping that has been installed without the ARB's approval.
Sections 7.01 and 13.08 did not require only that Esfahani submit a landscaping plan to the ARB for approval at some time; they required Esfahani to obtain the ARB's approval before altering his landscaping. Thus, an injunction requiring only the submission of a landscaping plan would not remedy Esfahani's breach of Sections 7.01 and 13.08, which expressly delegate to the ARB authority to decide whether particular landscape features should be present in Steelwood in the first place. In essence, Esfahani's primary contention on appeal is that, based on the language of the restrictive covenants set out in Steelwood's declaration, he could not have known in advance that planting palm trees on his property would not be allowed. The majority considered a similar point raised by the dissent in Grove Hill and ultimately concluded:
"[T]he law does not place the onus on the enforcer of restrictive covenants to warn violators thereof that they may not be in compliance, particularly in circumstances such as those in the present case, where restrictive covenants require homeowners to gain preapproval of any improvements. Had the [homeowners] obtained such preapproval, any resulting damages could have been avoided."
90 So.3d at 738. In light of the foregoing, we will not reverse the portion of the trial court's judgment requiring that Esfahani remove the palm trees at issue.
Esfahani next argues that the trial court erred by ordering him to pay the Association's attorney fees and cites as support Willow Lake Residential Association, Inc. v. Juliano, 80 So.3d 226 (Ala. Civ. App. 2010).
"Attorney fees are recoverable under Alabama law as part of the costs of an action only where they are authorized by statute, where they are provided for in a contract, or where they can be awarded by special equity, such as a proceeding where the efforts of an attorney create a fund out of which fees may be paid."
Hart v. Jackson, 607 So.2d 161, 163-64 (Ala. 1992).
In its judgment, the trial court cited the Association's bylaws as the basis for its award of attorney fees. In its appellate brief, the Association cites Article XII of its bylaws as supporting the trial court's decision; Article XII provides, in relevant part:
"B. Enforcement of Rules and Regulations.... [T]he Board shall have the power, upon any violation of the Declaration, the By-Laws, or any rules and regulations duly adopted hereunder, (1) to impose reasonable monetary fines which shall constitute a lien upon the property of the owner guilty of such violation which shall be enforceable in like manner to the lien for assessments provided for in the Declaration ...."
*853 The Association cites Section 11.01 of Steelwood's declaration for an explanation of the procedure regarding liens for assessments, which, in relevant part, provides that the cost of attorney fees stemming from collection actions may be added to the amount of assessments. Additionally, the Association cites Section 15.03 of Steelwood's declaration, which authorizes it to recover damages for the breach of the restrictive covenants. The Association also relies on portions of Miller's testimony, wherein he opined that the Association was entitled to recover attorney fees in actions of this nature.
The record reveals no monetary fine imposed on Esfahani by the Association to which its attorney fees could be added in a like manner to the procedure set out in Section 11.01 of Steelwood's declaration. Insofar as the Association's complaint included a request that the trial court determine such a fine, the judgment includes no such determination. In other words, the Association has obtained only injunctive relief against Esfahani. The Association's bylaws and Section 11.01 of Steelwood's declaration contemplate an award of attorney fees only in addition to an established fine or assessment, i.e., arising out of a successful collection action. Moreover, attorney fees are not generally recoverable as damages, which renders Section 15.03 of Steelwood's declaration inapplicable here. See Austin Apparel, Inc. v. Bank of Prattville, 872 So.2d 158, 165-66 (Ala. 2003).
Esfahani contrasts the provisions in this case with those of the residential association in Willow Lake, 80 So.3d at 243, where we reversed a trial court's failure to award the residential association attorney fees. In Willow Lake, we noted:
"Section 5.13 provides, in pertinent part:
" 'All costs and expenses incurred by the ARC or the Association in enforcing any of the provisions of this Article V ... shall be paid by said Owner.'
"Section 12.02 provides, in pertinent part:
" '[I]n the event the ... Board [of the Association] ... undertake[s] any legal or equitable action which [the Board] deem[s] necessary to abate, enjoin, remove or extinguish any violation or breach of this Declaration, then all costs and expenses incurred by either of them, including, without limitation, attorneys' fees and court costs, in enforcing any of the terms, provisions, covenants or conditions in this Declaration shall be paid for by the Owner against whom such action was initiated.' "
80 So.3d at 240.
We agree with Esfahani. As already noted, the Association's bylaws and Steelwood's declaration were incorporated into Esfahani's deed by reference.
"It is well-settled that when there is no ambiguity in the language of a deed, a court must give effect to the clear and plain terms. African Methodist Episcopal Church v. Saint Paul Methodist Church of Selmont, 362 So.2d 868, 871 (Ala. 1978). Furthermore, '[w]here the language in a deed is plain and certain, acts and declarations of the parties cannot be resorted to to aid a construction.' Kennedy v. Henley, 293 Ala. 657, 662, 309 So.2d 435, 439 (1975)."
Philpot v. State, 843 So.2d 122, 125 (Ala. 2002). The plain language of neither the Association's bylaws nor Steelwood's declaration authorize an award of attorney fees in actions involving only injunctive relief, i.e., actions involving neither a fine nor an assessment. The trial court's award of attorney fees to the Association is therefore reversed, and we remand this case for the *854 trial court to enter a judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Thompson, P.J., and Pittman, Moore, and Donaldson, JJ., concur.

The trial court entered an order on July 21, 2017, directing the Association to respond to Esfahani's motion within 21 days. On July 25, 2017, Esfahani filed another motion, noting that the provisions of the trial court's judgment had effectively stayed its injunctive aspects for a period of 45 days and that its July 21, 2017, order had asked the Association to respond to Esfahani's postjudgment motion within 21 days, which would have been more than 45 days after the judgment was entered. Esfahani therefore again asked the trial court to stay enforcement of its judgment pending a resolution of his postjudgment motion. The Association responded to Esfahani's July 25, 2017, motion. On August 8, 2017, the trial court entered an order denying Esfahani's July 25, 2017, motion.

As already noted, Section 13.08 of Steelwood's restrictive covenants delegates to the ARB decision-making authority regarding landscaping installed on property located in Steelwood. The trial court cited Grove Hill Homeowners' Association, Inc. v. Rice, 43 So.3d 609 (Ala. Civ. App. 2010), to articulate its standard of review. See id. at 613 (" 'Where, as here, the declaration delegates decision-making authority to a group and that group acts, the only judicial issues are whether the exercise of that authority was procedurally fair and reasonable, and whether the substantive decision was made in good faith, and is reasonable and not arbitrary and capricious.' " (quoting Saunders v. Thorn Woode P'ship, L.P., 265 Ga. 703, 704, 462 S.E.2d 135, 137 (1995) ) ).

In several places in his appellate briefs, Esfahani asserts that the trial court erred by finding that he had never submitted a landscaping plan to the ARB, in light of the evidence presented demonstrating that Esfahani had, in fact, done so after installing the palm trees at issue. Admittedly, the trial court's judgment recounts Miller's interaction with Esfahani upon delivery of the palm trees and expressly states: "At no time thereafter did [Esfahani] present his plan to plant the trees permanently to the [ARB]."
Given the trial court's acknowledgment that the ARB had approved the palm trees installed near Esfahani's pool, we do not view the trial court's statement as a finding that the ARB was never made aware of Esfahani's plan to permanently install the palm trees at issue, especially because this action was initiated as a result of that decision. We instead view that statement as a finding that Esfahani did not inform the ARB of his decision to permanently install the palm trees before doing so. Insofar as the trial court reached an erroneous finding regarding whether Esfahani ever submitted a landscaping plan, however, we have been presented with no basis to reverse its judgment on that ground, and it is undisputed that Esfahani did not obtain the ARB's approval before installing the palm trees at issue.